HOME INSURANCE COMPANY v DETROIT FIRE EXTINGUISHER
COMPANY, INC

Docket No. 168342. Submitted January 5, 1995, at Lansing. Decided
June 20, 1995; approved for publication August 7, 1995, at 9:00
A.M. Leave to appeal sought.

Home Insurance Company and Crown Group, Inc., brought an
action in the Wayne Circuit Court against Detroit Fire Extin-
guisher Company, Inc., seeking damages for losses sustained
when a fire damaged a manufacturing plant operated by Crown
that contained a fire extinguishing system supplied by the
defendant. The defendant filed a third-party complaint against
Devilbiss Company. The court, Diane M. Hathaway, J., granted
summary disposition for the defendant, concluding that the
contract between Crown and the defendant was for a sale of
goods under Article 2 of the Uniform Commercial Code and,
thus, the plaintiffs' tort claims were barred by the economic
loss doctrine. The plaintiffs' contract claims were found to be
untimely under the UCC's statute of limitations. The court also
ruled that no additional contracts arose between the parties as
a result of the defendant's various inspections, repairs, and
maintenance of the system and that, had such contracts arisen,
they would have been unenforceable pursuant to the statute of
frauds. The ruling had the effect of dismissing the third-party
complaint. The plaintiffs appealed.

The Court of Appeals *held:*

1. A material issue of fact exists regarding whether the
contract was for the sale of goods or to provide a service.
Where, as here, the contract calls for the design and *installa-
tion* of a unique system and contemplated regular servicing and
testing of the system after installation, as alleged by the
plaintiffs, it is not clear that summary disposition based on a
finding that the contract was for a sale of goods is appropriate.

2. The trial court, relying on its findings that there was no

REFERENCES
Am Jur 2d, Sales §§ 39-41; Negligence §§ 243-246.
See ALR Index under Goods and Merchandise; Intentional, Wilful,
and Wanton Acts; Sale and Transfer of Property; Services.

oral or implied contract between the defendant and Crown for work or maintenance to be performed on the system after its installation, incorrectly found that the defendant's duty was limited. An issue of material fact remains regarding whether defendant owed Crown a duty of care upon which tort claims could be based. Where, as in this case, a determination of duty depends on factual findings, those findings must be the province of the finder of fact and summary disposition is not appropriate.

3. The plaintiffs are not required to show precedent negligence before proceeding on a claim of gross negligence. The trial court's grant of summary disposition of the issue of the defendant's gross negligence must be reversed.

Reversed and remanded.

1. SALES — UNIFORM COMMERCIAL CODE — SALES OF GOODS — SALES OF SERVICES.

A court faced with the determination whether a contract for the sale of goods and services is a transaction in goods to which the Uniform Commercial Code applies should examine the purpose of the dealings between the parties; if the purchaser's ultimate goal is to acquire a product, the transaction should be considered a transaction in goods, even though service is incidentally required; if the purchaser's ultimate goal is to procure a service, the contract is not governed by the UCC, even though goods are incidentally required in the provision of the service (MCL 440.2102; MSA 19.2102).

2. NEGLIGENCE — ACTIONS — GROSS NEGLIGENCE — PRECEDENT NEGLIGENCE.

A plaintiff is not required to show precedent negligence before proceeding on a claim of gross negligence.

*Morrison, Mahoney & Miller* (by *Bruce C. Kempton* and *Jeffrey R. Learned*), for the plaintiffs.

*Kaufman & Payton* (by *Kenneth C. Letherwood* and *Ralph C. Chapa, Jr.*), for Detroit Fire Extinguisher Company, Inc.

*Cholette, Perkins & Buchanan* (by *Robert E. Attmore*), for Devilbiss Company.

Before: Fitzgerald, P.J., and Marilyn Kelly and G. N. Bashara, Jr.,* JJ.

Per Curiam. Plaintiffs appeal as of right from a circuit court order granting summary disposition to the defendant. We reverse.

In March 1986, defendant Detroit Fire Extinguisher Company, Inc., contracted in writing to supply a fire extinguisher system in a manufacturing plant operated by plaintiff Crown Group, Inc. Included in the contract were "all necessary pipe[s], fittings, nozzles, system equipment, drawings, engineering and labor to install." The system had to be designed for the specific needs of Crown's plant; it was installed and found to be functional in August 1986.

During a routine steam cleaning of the plant in November 1986, the system accidentally discharged. As a result, defendant adjusted the system to prevent it from triggering at low temperatures (plaintiffs alleged that the system was modified, although defendant alleged that parts merely were replaced with identical components). In January 1990, the defendant recharged the system and replaced some parts.

On November 10, 1990, a fire occurred and the system failed to activate.[1] A photo taken during the early stages of the investigation of the fire showed the presence of a resistor in the circuitry of the fire suppression system. It has been theorized that the resistor prevented the system from

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

[1] A third-party complaint was filed, alleging that the fire started in a paint spray booth manufactured by third-party defendant Devilbiss Company. The circuit court's ruling had the effect of dismissing the third-party complaint. Although the Devilbiss Company is not directly involved in the issues on appeal, our disposition will also reinstate the third-party action.

operating properly. During the investigation, the system accidentally discharged, so the defendant was called to investigate. After defendant's repair crew departed, the resistor shown in the photo had disappeared.

Plaintiff Home Insurance Company paid for fire damage and, as subrogee of Crown Group, filed this action on May 5, 1992. Plaintiffs alleged negligence and gross negligence in the design, installation, inspection, and maintenance of the system; breach of contract for providing a system that failed to perform as intended; breach of contract for failing to detect and remedy defects; and other counts not involved in this appeal. Defendant moved for summary disposition, arguing that plaintiffs' claims were barred by the Uniform Commercial Code's four-year period of limitation, MCL 440.2725(1); MSA 19.2725(1),[2] and that plaintiffs' tort claims were barred by the "economic loss doctrine" applicable in UCC actions, see *Neibarger v Universal Cooperatives, Inc*, 439 Mich 512, 520-521; 486 NW2d 612 (1992). Plaintiffs argued that this was a general breach of contract action controlled by the six-year period of limitation of MCL 600.5807(8); MSA 27A.5807(8).[3] Plaintiffs argued that their tort actions should survive because the "economic loss doctrine" applies only in UCC actions and this was a contract for services outside the scope of the UCC.

The circuit court concluded that this was a sale of goods under Article 2 of the UCC, and, thus, the tort claims were barred by the economic loss doctrine. The contract claims were ruled untimely

[2] Under the UCC's statute of limitations, an action accrues when the nonconforming goods are delivered, not when the defect is discovered. MCL 440.2725(2); MSA 19.2725(2).

[3] Even if the three-year tort period of limitation applied under MCL 600.5805(8); MSA 27A.5805(8), the "discovery rule" would make this action timely.

under the UCC's statute of limitations. Finally, the court ruled that there were no additional contracts between the parties arising from the various inspections, repairs, and maintenance services (which apparently were performed without additional compensation). The court also reasoned that had such contracts arisen, they would have been unenforceable pursuant to the statute of frauds, MCL 566.132(1); MSA 26.922(1).

I

The seminal question to be resolved is whether a contract for the sale and installation of a fire extinguishing system is primarily a sale of *goods,* actionable under the UCC, or a sale of *services,* actionable under general principles of common law. The answer to this question will automatically determine whether the UCC's more restrictive statute of limitations applies and whether the economic loss doctrine bars a tort action.

Plaintiffs contend the transaction is one for services, or at least for a mixture of goods and services, and, thus, is unaffected by the UCC. At a minimum, plaintiffs argue, the question whether the transaction was one for goods or services should be left to the jury. Defendant concedes that the sale involved a mixture of goods and services, but reasons that the overall thrust of the contract was a sale of goods.

Article 2 of the UCC governs the relationship between the parties involved in "transactions in goods." *Neibarger, supra* at 519; MCL 440.2102; MSA 19.2102. Under Article 2, the purchaser of defective goods may recover for economic loss and incidental and consequential damages provided the action to recover is brought within four years of tender of delivery of the goods, regardless of the

time of discovery of the breach. *Neibarger, supra* at 519-520. However, if the purpose of the sale is for services, the regular statute of limitations in the Revised Judicature Act applies.

When determining whether the UCC applies to a contract for the sale of goods and services, Michigan courts apply the predominant factor test. *McFadden v Imus,* 192 Mich App 629, 632; 481 NW2d 812 (1992). The issue was well-stated in *Neibarger, supra* at 536:

> It is difficult to imagine a commercial product which does not require some type of service prior to its purchase, whether design, assembly, installation, or manufacture. If a purchaser were able to avoid the UCC by pleading negligent execution of one of the services required to produce the product, Article 2 could be easily and effectively negated. A court faced with this issue should examine the purpose of the dealings between the parties. If the purchaser's ultimate goal is to acquire a product, the contract should be considered a transaction in goods, even though service is incidentally required. Conversely, if the purchaser's ultimate goal is to procure a service, the contract is not governed by the UCC, even though goods are incidentally required in the provision of this service.

As a defense, the statute of limitations is properly raised under MCR 2.116(C)(7). A motion under MCR 2.116(C)(7) may be supported by affidavits, admissions, or other documentary evidence and, if submitted, must be considered by the court. *Patterson v Kleiman,* 447 Mich 429, 432; 526 NW2d 879 (1994). We must take the well-pleaded allegations in the pleadings and the factual support submitted by the nonmoving party as true, and summary disposition is proper only if the moving

party is then shown to be entitled to judgment as a matter of law.

Under that standard, this Court is convinced that there exists a material issue of fact regarding whether the contract was for the sale of goods or whether the thrust of the contract was to provide a service. Had the contract called for the purchase of a preexisting product, with the only service being its installation, the circuit court's conclusion that the contract was one for goods undeniably would be sustainable. However, where, as here, the contract calls for the design and installation of a *unique* system and contemplates regular servicing and testing of the system after installation (as alleged by plaintiffs), it is less clear that summary disposition is appropriate.

II

Plaintiffs also argue that the circuit court erred in granting summary disposition to defendant arising out of defendant's postinstallation activities (additional servicing, including during the November 1986 investigation into the accidental discharge). Defendant counters that its actions were incidental to the original purchase and installation contract and gave rise to no additional duties.

We find that the circuit court incorrectly limited defendant's duty on the basis of its findings that there was no oral or implied contract between defendant and plaintiff Crown for work or for maintenance to be performed on the system after its installation. An issue of material fact remains regarding whether defendant owed Crown a duty of care upon which tort claims could be based.

While the question of the scope of duty ordinarily may be one of law for the court to decide, where a determination of duty depends on factual

findings, those must be the province of the finder of fact. *Farwell v Keaton,* 396 Mich 281, 286-287; 240 NW2d 217 (1976). The duty arising is that which accompanies every contract: a common-law duty to perform with ordinary care the thing agreed to be done. *Clark v Dalman,* 379 Mich 251; 150 NW2d 755 (1967); *Talucci v Archambault,* 20 Mich App 153, 161; 173 NW2d 740 (1969).

When defendant serviced the system after installation was complete it knew, or should have known, that plaintiff Crown was relying on defendant to make the system operable upon completion of service.

We must note that plaintiffs assert that the system did not activate because a resistor was left in place by defendant after testing. In his deposition, defendant's representative conceded that the resistor should not have been on the control panel if the system was to function properly. The fact that the resistor was shown in a photograph taken shortly after the fire—but was missing after defendant subsequently adjusted the system—must surely give rise to at least a factual question of negligence by defendant.

### III

Finally, plaintiffs argue that summary disposition regarding the issue of defendant's gross negligence should be reversed. We agree. Plaintiffs are not required to show precedent negligence before proceeding on a claim of gross negligence. *Jennings v Southwood,* 446 Mich 125; 521 NW2d 230 (1994). Although decided after the circuit court's ruling in this case, *Jennings* is controlling.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.