CITIZENS INSURANCE COMPANY v OSMOSE WOOD PRESERVING, INC

Docket No. 200763. Submitted March 10, 1998, at Detroit. Decided July 31, 1998, at 9:20 A.M. Leave to appeal sought.

Citizens Insurance Company, as subrogee of Kim's of Novi, Inc., brought an action in the Oakland Circuit Court against Osmose Wood Preserving, Inc., alleging, among other claims, negligence, breach of warranty, and fraud after wood trusses and roof decking treated with fire-retardant chemicals manufactured by the defendant and installed on a building housing Kim's restaurant collapsed. The court, Fred M. Mester, J., granted summary disposition for the defendant, ruling that the action is barred by the four-year limitation period of the Uniform Commercial Code (UCC), MCL 440.2725; MSA 19.2725. The plaintiff appealed.

The Court of Appeals *held*:

1. Where, as here, a plaintiff seeks to recover for economic loss caused by a defective product purchased for commercial purposes, the exclusive remedy is provided by the UCC, including its statute of limitations.

2. The defendant's provision of its wood-treatment product, which, in turn, was applied to the wood used in the trusses and roof decking, involved a sale of goods that is actionable under the UCC, not a sale of services that is actionable under general common-law principles.

3. Although fraud in the inducement is a recognized exception to the economic loss doctrine, in this case the plaintiff's claim of fraud in the inducement is a mere restatement of its claim of breach of warranty. Accordingly, the plaintiff's fraud claim does not fall outside the ambit of the economic loss doctrine.

Affirmed.

KELLY, J., dissenting, stated that the transaction involving the defendant was predominantly one for the rendition of services, not a sale of goods, and that the plaintiff's action therefore was not subject to the UCC. The order granting summary disposition for the defendant should be reversed.

SALES — UNIFORM COMMERCIAL CODE — ECONOMIC LOSS — PERIOD OF LIMITATION.

A plaintiff who seeks to recover for economic loss caused by a defective product purchased for commercial purposes is subject to the exclusive remedy provided by the Uniform Commercial Code, including the four-year statute of limitations (MCL 440.2101 *et seq.*, 440.2725; MSA 19.2101 *et seq.*, 19.2725).

*Buesser, Buesser, Black, Lynch, Fryhoff & Graham, P.C.* (by *John L. Hopkins, Jr.*), for the plaintiff.

*Plunkett & Cooney, P.C.* (by *Ernest R. Bazzana*), for the defendant.

Before: YOUNG, JR., P.J., and KELLY and DOCTOROFF, JJ.

YOUNG, JR., P.J. This case involves a dispute regarding liability for the collapse of the roof of a restaurant owned and operated by Kim's of Novi (Kim's). It is alleged that the collapse was caused by the deterioration of wood roofing materials that were adversely affected by flame-retardant chemicals manufactured by defendant. Plaintiff, Kims' subrogee, insured the restaurant and paid in excess of $500,000 for the loss. Plaintiff sought, in turn, to recover the loss from defendant and initiated this lawsuit. The trial court determined that plaintiff's exclusive remedy was under the Uniform Commercial Code (UCC), MCL 440.1101 *et seq.*, MSA 19.1101 *et seq.*, and that its cause of action was barred by the UCC's four-year statute of limitations, MCL 440.2725; MSA 19.2725. Plaintiff appeals as of right from the court's subsequent order granting summary disposition to defendant pursuant to MCR 2.116(C)(7). We affirm.

I. FACTUAL AND PROCEDURAL BACKGROUND

Kim's owned and operated a restaurant in Novi, Michigan. During the original 1978 construction, the

builders installed wood trusses and plywood roof decking that had been treated for flame retardancy using chemicals manufactured by defendant. In 1982, Kim's had an addition to the building constructed. The roofing materials that were installed at that time had also been treated for flame retardancy using defendant's chemicals. Apparently, the wood was treated by a subcontractor according to instructions provided by defendant. Plaintiff's complaint alleged that on January 27 and 29, 1994, the wood trusses and plywood roof decking utilized in the 1978 and 1982 construction deteriorated and collapsed, "causing extensive damage to Plaintiff's subrogor's real and business personal property." Pursuant to its insurance policy with Kim's, plaintiff paid $556,111.68 for damages caused by the collapse.

In January 1995, plaintiff initiated the instant lawsuit against defendant, among others, alleging negligence, breach of warranty, and fraud. Defendant filed a motion for summary disposition under MCR 2.116(C)(7), (8), and (10). Defendant argued that, because plaintiff's claim arose from the commercial sale of goods and only economic damages were sought, the UCC provided plaintiff's exclusive remedy. Further, defendant argued that plaintiff's cause of action under the UCC was barred by the UCC's four-year limitation period.[1] The trial court agreed and granted summary disposition to defendant.

---

[1] Under Article 2 of the UCC, the purchaser of defective goods may recover for economic loss and incidental and consequential damages provided the action to recover is brought within four years of tender of delivery of the goods, regardless of the time of discovery of the breach. MCL 440.2725; MSA 19.2725; *Home Ins Co v Detroit Fire Extinguisher Co, Inc*, 212 Mich App 522, 526; 538 NW2d 424 (1995).

### II. STANDARD OF REVIEW

A trial court's grant or denial of summary disposition will be reviewed de novo. *Michigan Mut Ins Co v Dowell*, 204 Mich App 81, 86; 514 NW2d 185 (1994). When reviewing a motion for summary disposition under MCR 2.116(C)(7), the trial court accepts the plaintiff's well-pleaded allegations as true and construes them in the plaintiff's favor. *Witherspoon v Guilford*, 203 Mich App 240, 243; 511 NW2d 720 (1994). The court must also consider the affidavits, depositions, admissions, and documentary evidence then filed in the action or submitted by the parties. MCR 2.116(G)(5); *Patterson v Kleiman*, 447 Mich 429, 432-434; 526 NW2d 879 (1994). If there are no facts in dispute, whether the claim is statutorily barred is a question of law. *Witherspoon, supra* at 243.

### III. ANALYSIS

In *Neibarger v Universal Cooperatives, Inc*, 439 Mich 512, 527-528; 486 NW2d 612 (1992), our Supreme Court expressly adopted the "economic loss doctrine" and held that "where a plaintiff seeks to recover for economic loss caused by a defective product purchased for commercial purposes, the exclusive remedy is provided by the UCC, including its statute of limitations." The *Neibarger* Court explained that the doctrine

> hinges on a distinction drawn between transactions involving the sale of goods for commercial purposes where economic expectations are protected by commercial and contract law, and those involving the sale of defective products to individual consumers who are injured in a manner which

has traditionally been remedied by resort to the law of torts. [*Id.* at 520-521.]

Unlike some jurisdictions, the economic loss doctrine applies in Michigan even when the plaintiff is seeking to recover for property other than the product itself. *Id.* at 530.

Plaintiff argues that the economic loss doctrine should not apply in this case because, unlike the facts in *Neibarger*, (1) there was no contractual relationship between Kim's and defendant, (2) Kim's was not in a position to negotiate the terms of the sale, (3) the fire-retardant-treated wood was not directly related to Kims' business, and (4) Kim's could not have anticipated such an "unforeseeable disaster." However, we do not believe that the express *Neibarger* holding can be avoided simply by distinguishing *Neibarger* on its facts. Indeed, the following explanation from *Neibarger* demonstrates the broad scope of the Court's holding:

If a commercial purchaser were allowed to sue in tort to recover economic loss, the UCC provisions designed to govern such disputes, which allow limitation or elimination of warranties and consequential damages, require notice to the seller, and limit the time in which such a suit must be filed, could be entirely avoided. In that event, Article 2 would be rendered meaningless and, as stated by the [United States] Supreme Court in [*East River Steamship Corp v Transamerica Delaval, Inc*, 476 US 858, 866; 106 S Ct 2295; 90 L Ed 2d 865 (1986) ], "contract law would drown in a sea of tort."

. . . [A]doption of the economic loss doctrine will allow sellers to predict with greater certainty their potential liability for product failure and to incorporate those predictions into the price or terms of the sale. [*Neibarger, supra* at 528.]

Moreover, as plaintiff concedes, in both *Sullivan Industries, Inc v Double Seal Glass Co, Inc*, 192 Mich App 333; 480 NW2d 623 (1991), and *Freeman v DEC Int'l, Inc*, 212 Mich App 34; 536 NW2d 815 (1995), this Court expressly rejected the argument that the economic loss doctrine does not apply in the absence of privity of contract. We are bound to follow those decisions under MCR 7.215(H). Accordingly, because Kim's is a commercial business and the wood treated with defendant's chemicals was purchased for commercial purposes, and because the damage to the restaurant was purely economic, under *Neibarger*, the UCC provides the exclusive remedy.

Plaintiff also contends that the UCC is inapplicable in this case because defendant provided a service rather than a good. Plaintiff claims, and the dissent agrees, that the transactions at issue were primarily for services, not goods. We find plaintiff's position to be without merit. Michigan applies the "predominant factor test" to determine whether a contract primarily involves a sale of goods, actionable under the UCC, or a sale of services, actionable under general common-law principles. *Home Ins Co v Detroit Fire Extinguisher Co, Inc*, 212 Mich App 522, 526-527; 538 NW2d 424 (1995).

The problem with plaintiff's argument is that it misapprehends *defendant's* role in the transactions at issue: defendant merely provided the chemicals and accompanying instructions used by *another* company to treat the wood installed in Kims' restaurant. Importantly, we note that defendant is being sued only as a *manufacturer*. Accordingly, this Court's decision in *Frommert v Bobson Constr Co*, 219 Mich App 735; 558 NW2d 239 (1996), upon which the dissent relies,

is wholly inapposite. Because defendant provided only its wood-treatment product that, in turn, was applied to the wood used in the trusses and roof decking, we conclude that plaintiff's causes of action against defendant are governed by the UCC.[2]

Finally, plaintiff argues that even if the economic loss doctrine applies, it should nevertheless be permitted to pursue its claim of fraud in the inducement, which is a recognized exception to the economic loss doctrine. *Huron Tool & Engineering Co v Precision Consulting Services, Inc*, 209 Mich App 365, 371-374; 532 NW2d 541 (1995).

> Fraud in the inducement presents a special situation where parties to a contract appear to negotiate freely— which normally would constitute grounds for invoking the economic loss doctrine—but where in fact the ability of one party to negotiate fair terms is undermined by the other party's [precontractual] fraudulent behavior. [*Id.* at 372-373.]

Plaintiff claims that Kim's was fraudulently induced into purchasing wood building materials treated with defendant's fire-retardant chemicals because defendant made fraudulent representations about the suitability of using its treated wood in commercial building construction. However, we agree with the trial court that the misrepresentations alleged by plaintiff relate solely to the quality and characteristics of

---

[2] The dissent views the "transaction" at issue as the building of the restaurant and subsequent addition and thus as one analogous to the installation of the faulty roof in *Frommert, supra*. For the reasons stated in the text, whether the construction of the restaurant and addition can reasonably be viewed as the provision of services rather than goods is irrelevant to *defendant's* role. As noted, defendant was sued as a *manufacturer* of defective wood-treatment products and its only connection to the collapsed roof is that its products were purchased and apparently applied to wood used by the persons who erected the restaurant and addition.

defendant's flame-retardant chemicals. In essence, plaintiff's fraud claim is merely a restatement of its breach of warranty claim. See *id.* at 375. Consequently, plaintiff's fraud claim does not fall outside the ambit of the economic loss doctrine, and plaintiff is restricted to its UCC remedies.

For these reasons, we conclude that plaintiff's causes of action are governed by the UCC. Moreover, because it is clear that plaintiff's claims are precluded by the UCC's four-year statute of limitations, the trial court properly granted summary disposition to defendant.

Affirmed.

DOCTOROFF, J., concurred.

KELLY, J., (*dissenting*). I respectfully dissent.

In *Neibarger v Universal Cooperatives, Inc*, 439 Mich 512, 527-528; 486 NW2d 612 (1992), our Supreme Court adopted the "economic loss doctrine" and held that where a plaintiff seeks to recover for economic loss caused by a defective product purchased for commercial purposes, the exclusive remedy is provided by the Uniform Commercial Code (UCC), and its statute of limitations applies. See also *Frommert v Bobson Constr Co*, 219 Mich App 735, 737-738; 558 NW2d 239 (1996). An injury caused by a service, however, would not arise out of a "transaction in goods" and would not be governed by the UCC. *Neibarger, supra,* p 533; *Frommert, supra,* p 738. The test for determining whether contracts for mixed goods and services are governed by the UCC is as follows:

> The test for inclusion or exclusion is not whether they are mixed, but, granting that they are mixed, whether their predominant factor, their thrust, their purpose, reasonably stated, is the rendition of service, with goods incidentally involved . . . or is a transaction of sale, with labor incidentally involved. [*Neibarger, supra,* p 534, adopting the test set forth in *Bonebrake v Cox,* 499 F2d 951, 960 (CA 8, 1974).]

In my opinion, the transaction between the parties involved services, not goods. *Frommert, supra,* pp 738-739. Kim's, a Chinese restaurant, contracted with others to erect an addition to its restaurant. Hence, the essence of the contract(s) with the architects and builders was for services, not goods. Defendant also provided a service; it developed the flame retardancy chemical formula that was applied to the lumber used to build the addition to Kim's restaurant. The goods purchased by Kim's, the trusses and plywood roof decking, were merely incidental to the erection of the addition to the restaurant. As in *Frommert,* the wood trusses and plywood roof decking would have been of no value unless they were installed. Therefore, I conclude that the transaction between the parties was predominantly one for services, rather than for a sale of goods, and was not subject to Article 2 of the UCC. Under these circumstances, the four-year statute of limitations in Article 2 of the UCC does not apply. *Frommert, supra,* p 739.

Moreover, I do not believe that the *Neibarger* rationale should be applied in cases such as this. Unlike the plaintiffs in *Neibarger* who were in the dairy business and knew the foreseeable consequences of the failure of the milking-machine systems developed by defendants, Kim's restaurant was not in the lumber business and did not deal in goods such as fire-

retardant-treated lumber. Therefore, the foreseeability of the risks involved with chemically treated lumber would not have been nearly as apparent to Kim's, a Chinese restaurant, as were the risks involved in the milking-machine systems to the plaintiffs in Neibarger who were in the dairy business. The goods and services in this case, unlike in *Neibarger*, were merely incidental to Kim's restaurant business. Hence, this was more like a consumer transaction to which the UCC would not apply.

I would reverse.