ASSOCIATED MUTUAL HOSPITAL SERVICE OF MICHIGAN and AFL—CIO Public Employee Trust, Plaintiffs,

v.

HEALTH CARE SERVICE CORP. OF ILLINOIS, d/b/a Blue Cross and Blue Shield of Illinois, Defendant.

No. 1:99–CV–431.

United States District Court, W.D. Michigan, Southern Division.

Oct. 20, 1999.

Michael A. Zagaroli, Mika, Meyers, Beckett & Jones, P.L.C., Grand Rapids, MI, for Associated Mutual Hospital Service of Michigan, plaintiff.

Craig H. Lubben, Miller, Johnson, Snell & Cummiskey, PLC, Kalamazoo, MI, for Health Care Service Corp. of Illinois dba Blue Cross and Blue Shield of Illinois, defendant.

## OPINION

ENSLEN, Chief Judge.

### INTRODUCTION

From March of 1994 through July of 1998 the Defendant, Health Care Service Corp. of Illinois ("HCSC"), had a contract with the United States Health Care Administration ("HCFA") to be the Medicare Part B claims administrator for eligible Medicare beneficiaries in Michigan. Associated Mutual Hospital Service of Michigan ("Associated") is a supplemental insurance provider for Medicare recipients. This means that Associated offers Medicare recipients an insurance product which covers costs not covered by Medicare. Before paying any claim for supplemental insurance, Associated requires that the claim be submitted under Medicare and rejected. In 1998, AFL—CIO Public Em-

ployee Trust ("PET") acquired control of Associated.

Plaintiffs' Complaint is based in large part on a Settlement Agreement that was entered into between HCSC and the United States on July 16, 1998. As part of that Agreement, HCSC pled guilty to one count of conspiracy, one count of endeavoring to obstruct a federal audit, and six counts of making false statements to the United States. Essentially, HCSC admitted that it had conspired to impede a federal audit of its records, and that it had made a variety of false statements to the United States relating to its processing of Medicare claims.

On July 1, 1999, Associated and PET filed an Amended Complaint against HCSC. Count One alleges fraud. Count Two alleges negligence. Count Three alleges gross negligence. Count Four alleges negligent supervision. This matter is before the Court on HCSC's Motion to Dismiss all of these counts.

### DISCUSSION

On August 6, 1999, HCSC filed its Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] HCSC advances three principal arguments in support of the Motion. First, HCSC argues that it owed no duty to the Plaintiffs and it cannot, therefore, be liable to Plaintiffs for either negligence or fraud. Second, HCSC argues that the Plaintiffs suffered no injury as a result of HSCS's conduct. Third, HCSC argues that the doctrine of economic loss bars Plaintiffs' claims.

### I. THE ELEMENT OF DUTY: NEGLIGENCE AND FRAUD COUNTS

HCSC's first argument is that it cannot be liable to Plaintiffs for either negligence or fraud because it owed no duty to Plaintiffs. Specifically, HCSC argues that it had no formal or informal business relationship with Associated or PET that would give rise to a duty to act in any particular way. Therefore, HCSC contends that because duty is an element of both fraud and negligence, Plaintiffs have failed to state a cause of action. In response, Plaintiffs argue that duty is not an element of fraud, and/or that HCSC owed a duty to Plaintiffs because they were foreseeable victims of HCSC's fraudulent conduct.

### A. THE FRAUD COUNT

■ Although the parties frame the issue as whether duty is an element of fraud, the Court believes that the real issue is whether fraud requires a showing that Defendant made representations with the intent to induce action on the part of Plaintiffs. In this case, Plaintiffs claim that HCSC fraudulently misrepresented certain facts to the United States and that Plaintiffs relied upon those misrepresentations causing Plaintiffs' damage.

■ The problem with this theory is that it ignores the fact that fraud requires proof that HCSC made representations to Plaintiffs, either directly or indirectly, with the intention that those representations be relied and acted upon by Plaintiffs. *Hi–Way Motor Co. v. Int'l Harvester Co.*, 398 Mich. 330, 247 N.W.2d 813, 815–16 (1976) (holding that an allegation of fraud must allege: (1) that the defendant made a material representation, (2) that the representation was false, (3) that when the defendant made the representation, it was known to be false, or was made recklessly, without any knowledge of its truth and was made as a positive assertion, *(4) that the defendant made the representation with the intention that it should be acted on by the plaintiff,* (5) that the plaintiff acted in reliance on it, and (6) that the plaintiff suffered damages as a result) (emphasis added); *Oppenhuizen v. Wennersten,* 2 Mich.App. 288, 139 N.W.2d 765, 768 (1966) (observing that fraud requires a showing that Defendant made statements with the intention that they be relied upon

---

**1.** The parties assume, without discussion, that Michigan state law applies to this matter.

by the Plaintiffs). Here, the Plaintiffs have failed to allege the existence of any facts which indicate that HCSC intended any of its statements to be relied upon by Plaintiffs. Therefore, Count I, the fraud claim, is dismissed.

## B. THE NEGLIGENCE COUNTS

It is clear that duty is a required element of any negligence action. It is equally clear that the existence of a duty is a legal question to be decided solely by the judge. *Simko v. Blake,* 448 Mich. 648, 532 N.W.2d 842 (1995). What is much less clear, unfortunately, is whether the Defendant in this case owed a duty to Plaintiffs.

In determining whether a duty exists, courts look to different variables, including the (1) foreseeability of the harm, (2) degree of certainty of injury, (3) existence of a relationship between the parties involved, (4) closeness of connection between the conduct and injury, (5) moral blame attached to the conduct, (6) policy of preventing future harm, and (7) the burdens and consequences of imposing a duty and the resulting liability for breach. *Terry v. City of Detroit,* 226 Mich.App. 418, 573 N.W.2d 348, 352 (1997) (*citing Buczkowski v. McKay,* 441 Mich. 96, 490 N.W.2d 330, 333 (1992)). The mere fact that an event may be foreseeable is insufficient to impose a duty upon the defendant. *Samson v. Saginaw Professional Bldg., Inc.,* 393 Mich. 393, 224 N.W.2d 843 (1975). Furthermore, duty is a "question of whether the defendant is under any obligation for the benefit of the particular plaintiff" and concerns "the problem of the relation between individuals which imposes upon one a legal obligation for the benefit of the other." *Terry,* 573 N.W.2d at 352 (*citing Buczkowski,* 490 N.W.2d at 333). "Duty is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection." *Id.* Finally, the Michigan Supreme Court has indicated that, at core, the existence of a duty depends on a balancing of social interests. *Buczkowski,* 490 N.W.2d at 334 (*citing Waube v. Warrington,* 216 Wis. 603, 258 N.W. 497 (1935)).

HCSC argues that it had no contractual relationship with Plaintiffs and that there is no public policy reason for imposing a legal duty upon HCSC. Plaintiffs counter that HCSC owed them a duty because they were foreseeable victims of HCSC's actions and because the imposition of such a duty will deter corporations from defrauding the government. While forseeablilty alone is not sufficient to impose a duty on a defendant, Plaintiffs argue that the facts revealed during discovery will substantiate its claim that HCSC owed them a legal duty.

After reviewing the case law, the Court is convinced that Michigan courts have not decided whether, in cases such as this, a legal duty exists. Therefore, as this is a case of first impression under Michigan law, the Court believes that the Plaintiffs should be allowed to proceed on their negligence claims in order to develop facts supporting their contention that a duty should be imposed upon the Defendant. The Plaintiffs are encouraged during discovery to focus on those variables discussed by Michigan courts as being the most influential when determining the existence of legal duties. Finally, while the Court denies the Defendant's Motion to Dismiss the negligence counts today, it will entertain a summary judgment motion on this issue following discovery.

## II. DAMAGES

HCSC's second argument is that neither Associated nor PET have suffered any damages. HCSC argues that Plaintiffs could not have been damaged by a backlog of claims created by HCSC because this backlog did not increase the total amount or value of claims which Plaintiffs were required to pay under their insurance contracts. HCSC argues that while the backlog may have altered the timing of those payments, Plaintiffs were

not required to pay any more than their insurance contracts required. Therefore, in the long run, the Plaintiffs suffered no actual damages.

While there is some intuitive logic to HCSC's argument, and Plaintiffs' pleadings are less than clear on the issue of damages, it seems that Plaintiffs are contending that their damages stem from more than just the altered timing of payments caused by the processing backlog. If the Court reads the Plaintiffs' briefs correctly, and draws the correct inferences from those briefs, the Plaintiffs' damages argument is as follows. First, HCSC's activities caused a backlog to develop in the processing of Medicare claims in the early and middle portion of 1998. Second, because of the backlog, Associated paid fewer claims over that period than it would have had there been no backlog. Third, neither Associated nor PET were aware of this backlog. Fourth, PET relied upon the claims experience of Associated, artificially low because of the backlog, when evaluating the value of that company prior to acquisition. This reliance caused PET to overvalue Associated when negotiating with Associated on the cost of acquisition. Fifth, because rate increases are based upon past claims experience, and because the past claims experience of Associated was artificially low, Associated requested a rate increase from the Michigan Insurance Bureau which did not reflect the fact that many claims were backlogged at HCSC. Sixth, as the backlog was eliminated in late 1998 and early 1999, Associated experienced a dramatic increase in the number and value of claims that were presented to it. Seventh, in order to pay these claims, Associated's cash reserves fell below the amount required by the Michigan Insurance Bureau. Eighth, this depletion of cash reserves forced PET to infuse thousands of dollars into Associated. Ninth, Associated will be unable to recover this shortfall because future rate increases cannot be based on previous unexpected losses.

If this assessment of the Plaintiffs' theory of damages is correct, items Four, Eight, and Nine represent the bases for Plaintiffs' damages. Whether or not the Plaintiffs can prove any of these contentions remains to be seen. At this point, however, the Plaintiffs have alleged the existence of damages sufficient to withstand a Rule 12(b)(6) motion. Therefore, this portion of Defendant's Motion to Dismiss is denied.

## III. ECONOMIC LOSS DOCTRINE

■ HSCS's third argument is that the doctrine of economic loss bars recovery because the Plaintiffs' claim only alleges economic damages. The Court does not agree. The economic loss doctrine provides that "where a purchaser's expectations in a sale are frustrated because the product bought is not working properly, his remedy is said to be in contract alone, for he has suffered only 'economic losses.'" *Neibarger v. Universal Cooperatives,* 439 Mich. 512, 486 N.W.2d 612, 615 (1992) (*quoting Kennedy v. Columbia Lumber & Mfg. Co.,* 299 S.C. 335, 384 S.E.2d 730 (1989)). As a result, the Michigan Supreme Court held that "where a plaintiff seeks to recover for economic loss *caused by a defective product* purchased for commercial purposes, the exclusive remedy is provided by the UCC...." *Neibarger,* 486 N.W.2d at 616 (emphasis added).

■ By the *Neibarger* Court's own terms, the economic loss doctrine only applies to suits against a seller of a defective product for economic losses caused by the defective product. Therefore, because this case does not involve the sale of defective products, the economic loss doctrine does not apply. *See Detroit Edison Co. v. NABCO, Inc.,* 35 F.3d 236 (6th Cir.1994) (concerning defective pipes); *Bailey Farms, Inc. v. NOR–AM Chem. Co.,* 27 F.3d 188 (6th Cir.1994) (concerning defective fumigant); *Martin v. A.O. Smith Corp.,* 931 F.Supp. 543, (W.D.Mich.1996) (concerning defective feed storage system); *Valleyside Dairy Farms, Inc. v. A.O.*

*Smith Corp.*, 944 F.Supp. 612 (W.D.Mich. 1995) (concerning defective feed storage system); *Citizens Insurance Co. v. Osmose Wood Preserving, Inc.*, 231 Mich. App. 40, 585 N.W.2d 314 (1998) (concerning defective roof); *Neibarger*, 439 Mich. 512, 486 N.W.2d 612 (1992) (concerning defective milking system). Therefore, this portion of Defendant's Motion to Dismiss is denied.

## CONCLUSION

As a result, Defendant's Motion to Dismiss is granted with respect to Count One and denied with respect to Counts Two, Three and Four.

## ORDER

In accordance with the Opinion of this date;

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (dkt.# 9) is **GRANTED** with respect to Count One of the Complaint and **DENIED** with respect to Counts Two, Three and Four. Count One of the Complaint is hereby dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).