### WRIGHT TOOL COMPANY, INC., Plaintiff,

v.

### CHEMCHAMP NORTH AMERICA CORP., a foreign Corporation, and AMH Canada, Ltd., a foreign Corporation, Defendants.

No. 01–72916.

United States District Court, E.D. Michigan, Southern Division.

Feb. 1, 2002.

Arthur A. Garton, Garton, Garton, Vogt, Clinton Township, MI, for Plaintiff.

Elisa M. Angeli, Miller, Canfield, Detroit, MI, David A. Breuch, David C. Kocab, Clark Hill, Detroit, MI, for Defendants.

---

## OPINION AND ORDER

FEIKENS, District Judge.

This suit arises out of the purchase and sale of sixteen resistance welders. Wright Tool Company, Inc. ("Wright Tool"), plaintiff, is an automotive industry supplier located in Troy, Michigan. ChemChamp North America Corp. ("ChemChamp"), a Canadian corporation, is a distributor of welding equipment. AMH Canada, Ltd. ("AMH"), also a Canadian corporation, manufactures welding equipment.

Wright Tool has brought suit against AMH and ChemChamp alleging breach of contract, misrepresentation and fraud.

Defendant AMH filed a Motion to Dismiss on October 30, 2001. Defendant Chem-Champ filed a Motion to Dismiss Count II of the Complaint (fraudulent misrepresentation), on November 6, 2001. Both motions are granted.

## I. FACTUAL BACKGROUND

In May, 1998, ChemChamp contacted Wright Tool regarding the purchase of a Spot Champ Model No. 425 resistance welder ("welder"), manufactured by AMH. (Compl. at ¶ 8, Def. ChemChamp Resp. at ¶ 8.)

Wright Tool alleges that at the time it was considering a purchase of the welder, ChemChamp made various representations concerning the performance of the welder. It alleges that ChemChamp represented that resistance welding was recommended by U.S. automotive manufacturers for the repair of vehicles. (Compl. at ¶ 10.) It asserts that ChemChamp stated that the welder met National Welding Institute specifications. It claims that ChemChamp stated that the welder was recommended for body shop activity, was the only resistance welder with a microprocessor, could weld through primer and would replicate factory spot welds on thin and thick panels. (Compl. at ¶ 9.)

On September 15, 1999, Wright Tool signed a purchase order agreement for the purchase of sixteen welders at a unit price of $5,995.00 each, for a total contract price of $95,920.00. (Compl. at ¶ 12, Def. Chem-Champ Resp. at ¶ 12.)

Wright Tool alleges that in October, 1999, the president of AMH, Oli Osmani, assured Wright Tool that AMH supported Wright Tool's marketing of the welders. (Compl. at ¶ 16.)

On November 8, 1999, Wright Tool and ChemChamp entered into a contract for the purchase of sixteen of the welders which incorporated the terms of the Sep-

tember 15, 1999, purchase agreement. (Compl. at ¶ 13.) Wright Tool alleges that it relied on ChemChamp's representations in its decision to enter into the contract.

The contract provided that Wright Tool would have "the exclusive right to sell ChemChamp Resistance Welders that use...a pneumatic pinch weld for the state of Michigan." (Compl. at Ex. B, ¶ 3.) The contract stated that ChemChamp was to "supply full product support, including black and white brochures, executive summary presentations, owner's manuals, certification specifications, warranty statements...." (Compl. at Ex. B, ¶ 4.) Wright Tool was to supply "full sales support." (Compl. at Ex. B, ¶ 5.) Wright Tool did in fact receive the welders pursuant to the contract.

Sometime after November 8, 1999, Wright Tool discovered that ChemChamp had entered into an agreement with another company to sell welders in Michigan, in violation of ¶ 3 of the contract, which provided exclusivity to Wright Tool for the Michigan market.

Wright Tool alleges that sometime after December 1, 1999, both AMH and Chem-Champ ceased all communication with Wright Tool and failed to give product support, training, product literature, or advertising programs as promised under the contract. (Compl. at ¶ 18.) In February, 2000, Wright Tool claims it contacted ChemChamp for assurances that they intended to abide by the contract. Wright Tool allegedly received such assurances.

Wright Tool filed suit in Oakland County Circuit Court on June 29, 2001. AMH, with the consent of ChemChamp, removed the case to this court on August 2, 2001, based on diversity of citizenship between the parties.

## II. ANALYSIS

A motion to dismiss may be granted under Fed.R.Civ.P. 12(b)(6), "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). In reviewing the motion, I must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff can establish facts in support of his claim that would entitle him to relief. *Ziegler v. IBP Hog Mkt., Inc.,* 249 F.3d 509, 512 (6th Cir.2001).

Since this is a diversity contract case, the law of the forum state, Michigan, applies. *Levine and Co., v. Calkraft Paper Co.,* 429 F.Supp. 1039, 1048 (E.D.Mich. 1976). The parties do not dispute that plaintiff's claims arise out of a transaction involving the sale of goods, and are governed by Michigan's Uniform Commercial Code ("UCC"). *See* MICH. COMP. LAWS ANN. §§ 440.2102 (2001) (UCC applies to transactions involving goods), 440.2105 (defining goods as "all things (including specially manufactured goods) which are moveable at the time of identification to the contract for sale other than the money in which the price is to be paid...and things in action.").

### A. Claims against AMH

Wright Tool has agreed to drop the breach of contract claim against AMH. (Def. AMH Br. Supp. Mot. Dismiss, at 4–6, Pl. Resp. to Def. AMH Mot. Dismiss at 4.) It is dismissed.

Remaining are Wright Tool's allegations of fraud and misrepresentation against AMH.[1] Wright Tool seeks damages for the

---

1. Specifically, Wright Tool claims that AMH made misrepresentations that its welders met certain specifications and were "good for the total automotive industry." (Compl. at ¶ 37.) Wright Tool then alleges that it "subsequently discovered that the Spot Champ model 425

loss of the contract price,[2] and loss of credibility and reputation in its market area. (Compl. at ¶ 42.)

Wright Tool cannot recover for consequential damages which sound in tort since they are barred by the economic loss doctrine. "[W]here a plaintiff seeks to recover for economic loss caused by a defective product purchased for commercial purposes, the exclusive remedy is provided by the UCC." *Neibarger v. Universal Cooperatives, Inc.*, 439 Mich. 512, 527–28, 486 N.W.2d 612 (1992). Since no contract existed between Wright Tool and AMH to warrant a cause of action under the UCC, it cannot recover contract damages. Since it cannot show consequential damages based in fraud, as will hereafter be explained, its claims against AMH are barred. Defendant AMH's Motion to Dismiss is granted as to the fraud and misrepresentation claims.

### B. Claims against ChemChamp

The breach of contract claim against ChemChamp stands. Wright Tool alleges that ChemChamp breached the contract by violating the exclusivity provision (Compl. at Ex. B, ¶ 3) and by failing to provide support (Compl. at Ex. B, ¶ 4). Although it has answered and denied Wright Tool's claims in its response, ChemChamp has not moved to dismiss the breach of contract claim.

Wright Tool also seeks damages for fraud and misrepresentation against ChemChamp, including loss of the contract price, and loss of credibility and reputation in its market area. (Compl. at ¶ 35.)

■ Wright Tool's fraud and misrepresentation claims against ChemChamp are barred by the economic loss doctrine.

Wright Tool cannot recover for consequential damages such as loss of credibility and reputation in its market area by pleading tort claims. Its sole avenue for recovery is for a breach of contract claim under the UCC, which could include a breach of implied warranty of fitness, although that has not been pleaded.

■ Plaintiff asserts that the fraud in the inducement exception to the economic loss doctrine applies and therefore their claims of loss of credibility and reputation are not barred. "Fraud in the inducement... addresses a situation where the claim is that one party was tricked into contracting. It is based on pre-contractual conduct which is, under the law, a recognized tort." *Huron Tool v. Precision Consulting Serv.*, 209 Mich.App. 365, 371, 532 N.W.2d 541 (1995) (citations omitted). The economic loss doctrine does not bar a fraudulent misrepresentation claim in tort if the plaintiff was fraudulently induced to enter into the contract.

The fraud in the inducement exception applies only if the fraud in question is "extraneous to the contract." *Id.* at 373, 532 N.W.2d 541. A fraud is interwoven with the breach when "the misrepresentations alleged by plaintiff relate solely to the quality and characteristics of defendant's [product]." *Citizens Ins.*, 231 Mich. App. at 46–47, 585 N.W.2d 314, *Huron Tool*, 209 Mich.App. at 373, 532 N.W.2d 541. In those cases, "the misrepresentations relate to the breaching party's performance of the contract, and do not give rise to an independent cause of action in tort." *Huron Tool*, 209 Mich.App. at 373, 532 N.W.2d 541.

---

resistance welders did not meet National Welding Institute specifications as represented and did not perform as anticipated, nor was it the recommended method of repairing vehicles." (Compl. at ¶ 38.)

**2.** This claim is difficult to understand since Wright Tool had no contract to purchase the welders from AMH.

Wright Tool asserts that the fraud in the inducement exception is applicable because of representations made by AMH and ChemChamp.[3] These alleged misrepresentations, however, are all "interwoven with the breach of contract." The fraud alleged by Wright Tool is identical to the factual allegations supporting its breach of contract counts. *See Huron Tool,* 209 Mich.App. at 373, 532 N.W.2d 541 (citations omitted). The alleged fraud did not cause harm to Wright Tool distinct from that caused by the alleged breach of contract. Indeed, the damages prayed for in Wright Tool's fraudulent misrepresentation include loss of the contract price. (Compl. at ¶¶ 35, 42.) There is no evidence that Wright Tool was the victim of pre-contractual trickery. *See Huron Tool,* 209 Mich.App. at 373, 532 N.W.2d 541. Since Wright Tool is a commercial business, and the welders in question were purchased for commercial purposes, its fraudulent misrepresentation claims are barred and its sole remedy is for breach of contract under the UCC. *Citizens Ins.,* 231 Mich.App. at 45, 585 N.W.2d 314.

Plaintiff points to the case of *Cargill v. Boag Cold Storage Warehouse, Inc.,* 71 F.3d 545 (6th Cir.1995), in support of its claim that the fraud in the inducement exception applies to this case. *Cargill* is inapposite because it concerned a negligence claim which arose out of a services contract. Since service contracts are not governed by the UCC, the court in *Cargill* never applied the economic loss doctrine, or discussed the fraud in the inducement exception. *Id.* at 550. Under the teachings of *Cargill,* the economic loss doctrine applies to the case at hand.

**3.** Plaintiff specifically claims that: (1) ChemChamp and AMH made representations regarding the performance of the welders, (2) ChemChamp and AMH made representations that the welder was recommended by the auto industry and met industry standards, (3) the president of AMH assured Wright Tool of his support, and (4) ChemChamp promised to Wright Tool that it would be the exclusive distributor of welders in Michigan.

## III. Conclusion

The breach of contract claim against AMH is dismissed pursuant to the agreement of the parties. Defendants' Motions to Dismiss are granted, and plaintiff's fraudulent misrepresentation claims against both ChemChamp and AMH are dismissed.

**IT IS SO ORDERED.**