Dennis A. DAHLMANN, an individual doing business as Bell Tower Hotel and Campus Inn Hotel, and Dahlmann Apartments, Ltd., a Michigan corporation, Plaintiffs,

v.

SULCUS HOSPITALITY TECHNOLOGIES, CORP. a Pennsylvania corporation, Lodgistix, Inc., a Kansas corporation, and Hospitality Management Systems, Inc., and Arizona corporation, Jointly and Severally, Defendants.

No. 98–CV–73359–DT.

United States District Court,
E.D. Michigan,
Southern Division.

June 17, 1999.

Steven Zarnowitz, Ann Arbor, for plaintiffs.

Robert V. Campedel, Pittsburgh, PA, John W. Schmieding, Bloomfield Hills, MI, for defendants.

## *OPINION*

DUGGAN, District Judge.

On June 3, 1998, plaintiffs Dennis A. Dahlmann and Dahlmann Apartments, Ltd. filed a three-count complaint against defendants Sulcus Hospitality Technologies Corporation and Hospitality Management Systems, Inc. ("HMS") in the Washtenaw County Circuit Court alleging: breach of contract (count I); breach of warranties (count II); and fraud and deceit (count III). Defendants removed this action to this Court on August 4, 1998. On October 13, 1998, plaintiffs filed a first amended complaint adding Lodgistix, Inc. as a defendant. This matter is before the Court on defendants' motion for summary judgment, or in the alternative for partial summary judgment on the amount of damages recoverable. A hearing was held on defendants' motion on June 10, 1999.

## Background

Plaintiffs entered into contracts with defendants to purchase property management systems incorporating hardware, software, installation, training, and support services for plaintiffs' two hotels in Ann Arbor, Michigan, the Bell Tower Hotel and the Campus Inn, between 1991 and 1992. The software purchased by plaintiffs controlled the central reservations systems at both hotels. The purchase agreement for the Bell Tower Hotel contained the following warranty from defendant Lodgistix in section 8(a):

> Upon delivery and installation of the hardware specified in the agreement, Vendor warrants that all software described in the Agreement shall be fully compatible with such hardware and shall be operational following installation in a reasonable manner. This warranty shall expire one year from and after Purchaser's written acknowledgment described in Section 3 above.

The Campus Inn agreement contained the following warranty in Addendum C:

> Vendor warrants that all software described in the Agreement shall be fully compatible with such hardware and shall be operational following installation in a reasonable manner. This warranty shall expire one year after the installation of the Prism color software upgrade.

The Prism upgrade was never installed. Plaintiffs allege that, "the software is no longer usable to post reservations past January 1, 2000 as the computer will improperly recognize such attempted reservations as belonging to the year 1900." (1st Am. Compl. at ¶ 33).

## Discussion

### Standard of Review

Summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the burden of informing the court of the basis for his or her motion. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The movant must demonstrate either the absence of a genuine issue of fact or the absence of evidence supporting the nonmoving party's case. *See id.* at 325, 106 S.Ct. at 2554.

Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552. The substantive law identifies which facts are material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

When determining whether there is a genuine issue for trial, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *accord Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "Although [the nonmoving party] is entitled to a review of the evidence in the light most favorable to him or her, the nonmoving party is required to do more than simply show that there is some 'metaphysical doubt as to the material facts.'" *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 800 (6th Cir.1994) (quoting *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356).

Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553 (quoting FED. R. CIV. P. 56(e)). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512.

### U.C.C. Applicability

Defendants claim that plaintiffs' complaint is time-barred because it was filed outside of the Uniform Commercial Code's ("U.C.C.") four-year statute of limitations provision. Plaintiffs claim that the agreements were "for services and that this is a general breach of contract action governed by the six-year limitation period." (Pls.' Reply to Defs.' Mot. for Summ. J. at 10). Article 2 of the U.C.C. governs the relationship between parties involved in "transactions in goods." MICH. COMP. LAWS § 440.2102. The purchaser of defective goods may recover for economic loss and consequential damages provided the action to recover is brought within four years of tender of delivery of the goods, regardless of the time of discovery of the breach. MICH. COMP. LAWS § 440.2725; *Home Ins. Co. v. Detroit Fire Extinguisher Co., Inc.*, 212 Mich.App. 522, 526, 538 N.W.2d 424 (1995), *lv. denied*, 451 Mich. 915, 550 N.W.2d 526 (1996).

Michigan applies the "predominant factor test" to determine whether a contract primarily involves a sale of goods,

actionable under the U.C.C., or a sale of services, actionable under general principles of the common law. *Id.* at 526–27, 538 N.W.2d 424.

If the purchaser's ultimate goal is to acquire a product, the contract should be considered a transaction in goods, even though service is incidentally required. Conversely, if the purchaser's ultimate goal is to procure a service, the contract is not governed by the U.C.C., even though goods are incidentally required in the provision of the service.

*Neibarger v. Universal Coop., Inc.,* 439 Mich. 512, 536, 486 N.W.2d 612 (1992).

Defendants argue in their motion that "there can be no doubt that plaintiffs' ultimate goal was to acquire a product." (Defs.' Mot. for Summ. J. at 11). Therefore, defendants argue, the reservation system should be treated as a "good," and thus subject to the provisions of the U.C.C., namely the four-year statute of limitations.[1] However, the agreements between the parties did not only include the sale of goods in the form of computer hardware. Software, training, installation, and continued technical support were all part of the agreements for both hotels. Courts have found software to be a "good" under the U.C.C. *See Advent Sys., Ltd. v. Unisys Corp.,* 925 F.2d 670, 675 (3d Cir. 1991) (collecting cases).

█ Applying *Niebarger,* simply because the agreements provided for installation, training, and technical support, does not automatically convert them into services contracts. In fact, the Ninth Circuit has held that the "goods" aspect of a contract predominated in a sale of a software system that also provided for training, repair, and upgrade services. *See RRX In-*

dus., Inc. v. Lab–Con, Inc., 772 F.2d 543 (9th Cir.1985). The relationship in the instant case is a mixed goods and services contract. However, the services are not substantially different from those generally accompanying computer system contracts, and therefore the agreements should be treated as involving the sale of "goods" under the U.C.C. *See Advent Sys.,* 925 F.2d at 676.

In the case at bar, plaintiffs were attempting to acquire a "good," specifically a reservation system for their two hotel properties. The provisions for installation, training, and technical support were incidental to the agreements for the system. The Court believes that the agreements at issue for software package development and installation were within the scope of the U.C.C. *See Downriver Internists v. Harris Corp.,* 929 F.2d 1147, 1151 (6th Cir.1991) (noting that several courts have held that agreements for software development are considered "goods").

█ Plaintiffs rely on *Home Ins.,* to claim that there is an issue of fact as to whether the agreements were for goods or services. However, the Court believes that the authorities previously cited, dealing with computer software systems, are more applicable to the instant case than *Home Ins.,* which was a dispute relating to fire extinguishers. Accordingly, following the reasoning of several courts, this Court finds that the agreements in the case *sub judice* were for "goods," and therefore the four-year statute of limitations from the U.C.C. applies.[2]

*Statute of Limitations*

Defendants argue that plaintiffs' breach of contract and breach of warranty claims

1. Defendants concede in their motion that no Michigan case has ruled whether a computer software system, such as in the instant case, constitutes a good or service under the U.C.C. (*See* Defs.' Mot. for Summ. J. at 11).

2. As the Court stated at the hearing on June 10, 1999, this Court sees no factual issue to be resolved by a jury. Plaintiffs have identified

no facts that are in dispute. In this Court's opinion, the determination as to whether or not that which was sold to plaintiffs was "goods" or "services" is a determination to be made by the Court, as a matter of law, where the facts relating to that which was provided to the purchaser are not significantly in dispute.

are barred by the U.C.C.'s four-year statute of limitations. The statute at issue provides:

(1) An action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued.

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

MICH. COMP. LAWS § 440.2725. Although there is some confusion as to when the computer systems were actually delivered and installed at both properties, plaintiffs' counsel conceded at oral argument that it is undisputed that both systems were "up and running" by mid–1992. Plaintiffs filed their complaint in this matter on June 3, 1998. Plaintiffs' complaint is clearly time-barred.

In the hopes of salvaging their breach of warranty claims, plaintiffs attempt to rely on the second sentence of § 440.2725(2), claiming that the warranties at issue extended to future performance. Plaintiffs

cite the Court to *Executone Bus. Sys. Corp. v. IPC Communications, Inc.*, 177 Mich.App. 660, 442 N.W.2d 755 (1989), for the proposition that if an express warranty explicitly extends to future performance, the cause of action accrues when the plaintiff discovers the breach. However, *Executone* only holds that a plaintiff is entitled to extend the time for discovery of the breach to include the length of time provided in the express warranty. *See Executone*, 177 Mich.App. at 666–68, 442 N.W.2d 755.

██ Both of the express warranty provisions only provided plaintiffs with one additional year to "discover" the breach. Therefore, under *Executone*, plaintiffs had until mid–1993 at the absolute latest in which to discover the breach. Accordingly, even affording plaintiffs the benefit of *Executone's* discovery rule, the Court believes that plaintiffs' complaint was filed beyond the four-year statute of limitations.[3] Defendants' motion for summary judgment shall be granted as to plaintiffs' breach of contract and breach of warranty claims.

*Fraud and Deceit*

██ In order to prove fraud and deceit, a plaintiff must establish: 1) that defendant made a material misrepresentation; 2) the misrepresentation was false; 3)

3. Although not discussed by either party at the hearing on June 10, 1999, plaintiffs, in their briefs, suggested that the doctrine of "fraudulent concealment" will toll the running of the four-year statute of limitations. This Court disagrees.

Fraudulent concealment means employment of artifice, planned to prevent inquiry or escape investigation, and mislead or hinder acquirement of information disclosing a right of action. The acts relied on must be of an affirmative character and fraudulent. The fraudulent concealment which will postpone the operation of the statute must be the concealment of the fact that plaintiff has a cause of action. If there is a known cause of action, there can be no fraudulent concealment which will interfere with the operation of the statute . . . .

It is not necessary that a party should know the details of the evidence by which to establish his cause of action. It is enough that he knows that a cause of action exists in his favor . . . .

*Lemson v. General Motors Corp.*, 66 Mich.App. 94, 97, 238 N.W.2d 414 (1975) (citations omitted).

Neither the pleadings nor the "evidence" pointed to by plaintiffs in the record, supports a conclusion that defendants employed any artifice to mislead or hinder plaintiffs' ability to acquire information disclosing a right of action. The evidence that plaintiffs point to revealing that defendants advised plaintiffs that the system was not Year 2000 compliant and that the system could be made Year 2000 compliant does not, in this Court's opinion, constitute conduct that rises to the level of "fraudulent concealment."

when defendant made the misrepresentation he or she knew it was false; 4) that defendant made it with the intention that it should be acted upon by plaintiff; 5) that plaintiff acted in reliance upon it; and 6) that plaintiff suffered injury because if it. *Hollowell v. Career Decisions, Inc.*, 100 Mich.App. 561, 572, 298 N.W.2d 915 (1980) (citing *Hyma v. Lee,* 338 Mich. 31, 37, 60 N.W.2d 920 (1953)). Plaintiffs allege that they,

> without knowledge of the falsity of defendants' statements and of defendants' material omissions, and believing defendants' statements to be true and complete ... purchased Lodgistix/Compusolv Software, and related hardware, support services, and training services, from the defendants in reliance on the truth and completeness of such statements and defendants' contractual commitments. Plaintiffs would not have made such purchases except for their reliance upon such statements and contractual commitments made by the defendants at the time the defendants offered such systems for sale.

(1st Am. Compl. at ¶ 50).

█ At the hearing on June 10, 1999, plaintiffs identified the "misrepresentation" as a statement made by Lee Ellen Fox, an employee of Lodgistix at the time of the purchase, to Bernard C. Dahlmann, who was involved with the purchase of the system that "both the HMS/Lodgistix software and the LANMARK software were equally well-suited to the needs of the Campus Inn Hotel." [4] Plaintiffs assert that the statement quoted above is "false" because the LANMARK system "was and has always been Year 2000 compliant while the HMS Lodgistix software was and is not." (Dahlmann Aff. at ¶ 9.)

Plaintiffs do not assert that anyone on behalf of defendants ever specifically asserted that the system that was purchased by plaintiffs was Year 2000 compliant. In

fact, there is no evidence that there was any discussion at the time of sale with respect to the need for the system to be Year 2000 compliant or any discussion whatsoever with respect to the present or potential ability of the system purchased to be or become Year 2000 compliant. Furthermore, plaintiffs have pointed to no evidence that Ms. Fox, in making the statement that both systems were "equally well-suited to the needs of the Campus Inn Hotel," knew or had reason to know that such statement was false (if in fact it was false). In fact, Dahlmann at his deposition stated,

> A. I do feel, however, that there's a good possibility that Sulcus realized that the year 2000 problem existed at the time the product was sold to us.
>
> Q. Upon what do you base that assertion?
>
> A. They wrote the software. They should realize its strengths and limitations.
>
> Q. But do you have any direct proof that they in fact knew at the time [they sold that product]?
>
> A. No.

(Dahlmann Dep. at 114).

This Court does not believe that plaintiffs have directed the Court to any evidence in the record that would support a claim that plaintiffs can establish a claim for fraud and deceit.

In order to state a claim for fraud and deceit, each of the aforementioned elements "must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery." *Id.* Accordingly, because plaintiffs cannot prove that defendants made a material misrepresentation that was false and were also aware of its falsity, summary judgment

---

4. This representation is also made in the affidavit of Bernard C. Dahlmann. (Ex. A, ¶ 8 to

Pl.'s Suppl. Reply Br.).

shall be granted to defendants on plaintiffs' fraud and deceit claim.

## Conclusion

For the reasons set forth above, defendants' motion for summary judgment shall be granted.

An Order consistent with this Opinion shall issue forthwith.