No. 2--04--0410

_________________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________________________

DEALER MANAGEMENT SYSTEMS, ) Appeal from the Circuit Court

INC., ) of Lake County.

)

Plaintiff-Appellant, )

) 

v. ) No. 02--L--460

)

DESIGN AUTOMOTIVE GROUP, INC., ) Honorable

) Terrence J. Brady,

Defendant-Appellee. ) Judge, Presiding.

_________________________________________________________________________________

JUSTICE CALLUM delivered the opinion of the court:

Plaintiff, Dealer Management Systems, Inc., appeals from an order of the circuit court of Lake County denying its petition under section 2--1401 of the Code of Civil Procedure (735 ILCS 5/2--1401 (West 2002)) to vacate the dismissal of its complaint against defendant, Design Automotive Group, Inc.  We affirm.

Plaintiff filed a two-count complaint on June 5, 2002.  Count I alleged that in 2000, defendant issued a purchase order to plaintiff for "computer programs and other services."  A copy of the purchase order attached to the complaint shows that plaintiff agreed to provide defendant with an "Accounting Information Management" system consisting of various separately priced software components.  The price of the individual components totaled $24,000, but plaintiff agreed to provide them as a package for $20,000 plus an additional $795 for an item identified as "RMCOBALRUNTIME SYSTEM FOR UNIX 16."  The purchase order also contains the following language:

"Software changes to AIM System to provid [
sic
] the same or better function as compared with current system.  Develop a MRP subsystem to meet manufaturing [
sic
] needs[.] Also includes data file conversion progr [
sic
] from our current system and load prgrams [
sic
] in the AIM system.  Also includes user training and support for 1 year.

@ [$]15000.00

Includes source code license for internal use only and not for resale to anyone or company."

Plaintiff alleged that defendant had breached the contract by failing to pay the $20,000 purchase price for the software.  Count II sought recovery in 
quantum meruit
 for other computer programs that plaintiff allegedly wrote for defendant.

On July 10, 2002, defendant moved to dismiss count I pursuant to section 2--619(a)(7) of the Code of Civil Procedure (Code) (735 ILCS 5/2--619(a)(7) (West 2002)).  Defendant argued that, because it had not signed the purchase order, the agreement was unenforceable under section 2--201(1) of the Uniform Commercial Code--Sales (UCC)--the statute of frauds--which provides, in pertinent part:

"[A] contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought ***."  810 ILCS 5/2--201(1) (West 2000).

On that same date, defendant also filed a demand for a bill of particulars as to count II.  Defendant subsequently moved to strike count II on the basis that plaintiff failed to file and serve a bill of particulars in response to the demand.  See 735 ILCS 5/2--607(b) (West 2002).  On August 27, 2002, the trial court granted the motion to strike, but gave plaintiff seven days to file a bill of particulars and seek leave to reinstate count II.  The court also gave plaintiff 21 days to respond to the motion to dismiss count I and continued the case to October 8, 2002, for a hearing on the motion to dismiss.  Plaintiff filed neither a bill of particulars nor a response to the motion to dismiss.  On October 8, 2002, the court granted the motion to dismiss count I and dismissed the entire complaint with prejudice.

On March 15, 2004, plaintiff filed a petition to vacate the dismissal of the complaint.  Plaintiff alleged that due to illness, its attorney neglected to respond to the motion to dismiss.  Plaintiff further alleged that because of a recordkeeping error, its attorney did not learn of the dismissal until February 2004.  Plaintiff set the petition for a hearing on April 6, 2004.  Defendant neither answered the petition nor moved to strike it, but on April 6, 2004, the trial court entered an order denying the petition.  This appeal followed.

To obtain relief under section 2--1401, a litigant "must affirmatively set forth specific factual allegations supporting each of the following elements: (1) the existence of a meritorious defense or claim; (2) due diligence in presenting this defense or claim to the circuit court in the original action; and (3) due diligence in filing the section 2--1401 petition for relief."  
Smith v. Airoom, Inc.
, 114 Ill. 2d 209, 220-21 (1986).  Whether to award relief under section 2--1401 lies within the sound discretion of the trial court depending on the facts and equities presented, and a reviewing court will not disturb that decision unless it represents an abuse of discretion. 
Airoom
, 114 Ill. 2d at 221.

Plaintiff frames the question on appeal as whether its petition was sufficient to establish grounds for relief under section 2--1401.  Plaintiff contends that because defendant did not answer the petition or move to strike it, its allegations must be taken as true, and the only question presented is whether the petition was legally sufficient.  See 
Windmon v. Banks
, 31 Ill. App. 3d 870, 873 (1975).  We disagree.  Under Supreme Court Rules 104 and 105 (134 Ill. 2d Rs. 104, 105), a party is entitled to notice that it must answer or otherwise respond to a section 2--1401 petition within 30 days after service of the petition.  Here, the petition was filed on March 15, 2004, along with a notice of "motion" indicating that the petition would be heard 22 days later on April 6, 2004.  The record does not indicate when the petition was served; thus we cannot determine if defendant's answer was not yet due on the hearing date.  Moreover, the notice of "motion" did not advise defendant that it was required to file an answer to the petition.  Under these circumstances, plaintiff must be deemed to have waived the requirement that defendant answer or otherwise respond to the petition.

Plaintiff also argues that because the trial court "dismissed" the petition, the factual allegations must be taken as true.  See 
Cartwright v. Goodyear Tire & Rubber Co.
, 279 Ill. App. 3d 874, 883 (1996).  However, the trial court's order recites that the petition was "denied," not that it was "dismissed."  Unfortunately, plaintiff has not supplied a report of proceedings of the April 6, 2004, hearing at which that order was entered, so we cannot be certain of the precise basis of the trial court's ruling.  It is possible that the trial court concluded that the petition was legally insufficient, but it is also possible that the court gave plaintiff the opportunity to prove its case and found the proof wanting.  It is well established that "an appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error, and in the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis."  
Foutch v. O'Bryant
, 99 Ill. 2d 389, 391-92 (1984).

We need not rest our decision entirely on the inadequacy of the record, however.  Even if we were to accept plaintiff's argument that the only issue before us is the legal sufficiency of the petition, we would resolve that issue against plaintiff.  We conclude that the petition fails to satisfy the first requirement for relief under section 2--1401: the existence of a meritorious defense or claim.  In its appellate brief, plaintiff addresses only the dismissal of its breach of contract claim.  As previously discussed, defendant moved for dismissal on the basis that the contract did not comply with the UCC's statute of frauds for the sale of goods.  Plaintiff contends that it has a meritorious claim because the underlying contract was not for a sale of goods subject to the statute of frauds.  According to plaintiff, the contract was wholly or predominantly for the provision of services and thus not subject to the statute of frauds.  We disagree.

Before proceeding, we note that plaintiff's petition did not offer any new facts bearing on the applicability of the statute of frauds.  Rather, in its petition plaintiff essentially seeks to raise an error of law.  There is conflicting authority on whether a section 2--1401 petition may be predicated on legal error.  Compare 
Universal Outdoor, Inc. v. City of Des Plaines
, 236 Ill. App. 3d 75, 81 (1992) ("[A] petition under section 2--1401 is not appropriate for review of errors of law"), with 
Hoopingarner v. Peric
, 28 Ill. App. 3d 53, 57 (1975) (a section 2--1401 petition "is proper for the correction of errors of law apparent on the face of the record").  For purposes of our analysis, we will assume, without deciding, that an error of law may be raised in a section 2--1401 petition.

The UCC's statute of frauds for the sale of goods appears in Article 2, which applies to "transactions in goods."  810 ILCS 5/2--102 (West 2002).  "Goods" is defined, in pertinent part, as "all things, including specially manufactured goods, which are moveable at the time of identification to the contract for sale."  810 ILCS 5/2--105(1) (West 2002).  A sampling of decisions from various jurisdictions shows that courts have generally recognized that computer software qualifies as a "good" for purposes of the UCC.  See, 
e.g.
, 
Micro Data Base Systems, Inc. v. Dharma Systems, Inc.
, 148 F.3d 649, 654 (7th Cir. 1998) (applying New Hampshire law); 
Advent Systems Ltd. v. Unisys Corp.
, 925 F.2d 670, 675-76 (3d Cir. 1991) (applying Pennsylvania law); 
ePresence, Inc. v. Evolve Software, Inc.
, 190 F. Supp. 2d 159, 163 (D. Mass. 2002) (applying California law); 
Newcourt Financial USA, Inc. v. FT Mortgage Cos.
, 161 F. Supp. 2d 894, 897 (N.D. Ill. 2001) (applying Illinois law); 
Dahlmann v. Sulcus Hospitality Technologies, Corp.
, 63 F. Supp. 2d 772, 775 (E.D. Mich. 1999) (applying Michigan law); 
Architectronics, Inc. v. Control Systems, Inc.
, 935 F. Supp. 425, 432 (S.D.N.Y. 1996) (applying New York law); 
Olcott International & Co., v. Micro Data Base Systems, Inc.
, 793 N.E.2d 1063, 1071 (Ind. App. 2003).  However, whether a particular transaction involving computer software constitutes a "transaction in goods" depends on various considerations.  Most courts would probably agree that an ordinary sale of "off-the-rack" software is a transaction in goods.  See, 
e.g.
 
Olcott International & Co.
, 793 N.E.2d at 1071 (Article 2 of UCC applied to contract for purchase of "pre-existing, standardized" software).  In contrast, a transaction predominantly involving the intellectual property rights to the software is outside the scope of Article 2.  See 
Architectronics, Inc.
, 935 F. Supp. at 432.

Some courts have concluded that a contract to develop entirely new software is one for services rather than goods.  
Pearl Investments, LLC v. Standard I/O, Inc.
, 257 F. Supp. 2d 326, 353 (D. Me. 2003) (developer's agreement to create software "from scratch (concept to realization) for which it would be paid on a time and materials basis" was a contract for services); see also 
Micro-Managers, Inc. v. Gregory
, 147 Wis. 2d 500, 505-07, 434 N.W.2d 97, 100 (App. 1988).  But see 
Dharma Systems, Inc.
, 148 F.3d at 654 ("we can think of no reason why the UCC is not suitable to govern disputes arising from the sale of custom software"); 
Downriver Internists v. Harris Corp.
, 929 F.2d 1147, 1151 (6th Cir. 1991) (noting decisions holding that contracts for software package development are for goods, not services).  On the other hand, a contract that calls for the modification or customization of existing software may still be a transaction in goods.  See 
Dharma Systems, Inc.
, 148 F.3d at 654 (Article 2 applied to agreement to adapt proprietary software); 
Advent Systems Ltd
., 925 F.2d at 675 ("The fact that some programs may be tailored for specific purposes need not alter their status as 'goods' because the [UCC] definition includes 'specially manufactured goods' ").

Contracts for the sale of software often also involve the provision of services.  "Where there is a mixed contract for goods and services, there is a 'transaction in goods' only if the contract is predominantly for goods and incidentally for services."  
Brandt v. Boston Scientific Corp.
, 204 Ill. 2d 640, 645 (2003).  Article 2 applies to software transactions where the services provided "are not substantially different from those generally accompanying package sales of computer systems consisting of hardware and software."  
Advent Systems Ltd.
, 925 F.2d at 676.  Such ancillary services include installation, training, and technical support.  
Dahlmann
, 63 F. Supp. 2d at 775.  Comparing the relative costs of materials and labor may be helpful in the analysis, but is not dispositive.  
Advent Systems Ltd.
, 925 F.2d at 676; accord 
ePresence, Inc.
, 190 F. Supp. 2d at 163 ("As the Agreement's price terms make plain, the software programs themselves were the essence of the Agreement").

Finally, although the statute of frauds applies only to contracts for the "sale" of goods, the labels used by the parties to describe a transaction are not controlling.  Thus, a transaction that nominally involves a mere license to use software will be considered a sale under the UCC if it " 'involves a single payment giving the buyer an unlimited period in which it has a right to possession.' "  
Softman Products Co., LLC v. Adobe Systems Inc.
, 171 F. Supp. 2d 1075, 1086 (C.D. Cal. 2001), quoting R. Nimmer, The Law of Computer Technology §1.18[1], at 1--103 (1992).

Applying these principles here, we conclude, as a matter of law, that the contract was predominantly for goods and only incidentally for services, and that it amounted to "a sale of goods" under the UCC.  The written agreement is entitled "purchase order."  It lists various software "subsystems" with descriptions corresponding to standard accounting tasks (
e.g.
, "Accounts Receivable Subsys.," "Inventory Control Subsys").  There is nothing in plaintiff's complaint or in the purchase order itself to suggest that these components were developed "from scratch."  The subsystems are separately priced, but sold as a package for $20,000.  The price for services, in comparison, is only $15,000.  Moreover, this amount includes customization of the software.  Customization may be treated as "the 'manufacture' of the 'good' from existing software" rather than as a service.  
Dharma Systems, Inc.
, 148 F.3d at 655.  Thus, more than $20,000 of the contract price is for goods and less than $15,000 is for services.  In addition, the services provided--installation, training, and support--"are not substantially different from those generally accompanying package sales of computer systems consisting of hardware and software."  
Advent Systems Ltd.
, 925 F.2d at 676.  The agreement is a sale subject to the statute of frauds because it provided for transfer of the software for an unlimited time for a single payment.  Accordingly, plaintiff has not shown the existence of a meritorious claim that could have withstood the UCC's statute of frauds.  Plaintiff was not entitled to relief under section 2--1401 of the Code.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

McLAREN and BOWMAN, JJ., concur.