# STATE OF MICHIGAN

# COURT OF APPEALS

MARK L. MCALPINE, LYNETTE MCALPINE, and MARK L. MCALPINE LIVING TRUST,

      Plaintiffs-Appellants/Cross-Appellees,

v

DONALD A. BOSCO BUILDING, INC., SMEDESON STEEL & SUPPLY COMPANY, INC., a/k/a SMEDE-SON STEEL & SUPPLY CO, INC., SCHWARTZ PLUMBING, INC., GENESEE CUT STONE & MARBLE COMPANY, K & R CONCRETE, INC., DETROIT SPECTRUM PAINTERS, INC., ROCWALL COMPANY, STONEWORK BY GULYAS & CO, R & R EARTHMOVERS, INC., B & B WELL DRILLING, INC., NATIONAL LADDER & SCAFFOLD COMPANY, INC., PROFESSIONAL ENGINEERING ASSOCIATES, INC., TRUCKING SPECIALISTS, INC., BEAVER STAIR COMPANY, DELTA TRIM & DESIGN, INC., FRANKLIN FLOOR COVERING PLUS, INC., FMG CONCRETE CUTTING, INC., GET RICH QUIK, INC., CAPITAL STONEWORKS, L.L.C., NEILSON QUALITY HOMES, INC., and TM WOOD PRODUCTS,

      Defendants-Appellees/Cross-Appellants,

and

MIKE OTTMAN ASPHALT PAVING, L.L.C., DILLMAN AND UPTON, INC., EXTREME STONE SOLUTIONS, L.L.C., NOVI INSULATION, INC., MARINE CITY CEILING & PARTITION, INC., and ACE ASPHALT & PAVING COMPANY,

UNPUBLISHED
December 18, 2014

No.   316323
Oakland Circuit Court
LC No.   2009-097338-CK

-1-

Defendants-Appellees,

and

WATERTITE COMPANY, a/k/a WATER-TITE
COMPANY, SATURN ELECTRIC, INC.,
NATIONAL CITY BANK, HOMEOWNER
CONSTRUCTION LIEN RECOVERY FUND,
and NATIONAL CITY MORTGAGE,

Defendants.

Before: O'CONNELL, P.J., and CAVANAGH and FORT HOOD, JJ.

PER CURIAM.

Plaintiffs, Mark L. McAlpine, Lynette McAlpine, and the Mark L. McAlpine Living Trust appeal as of right an order awarding statutory attorney fees, entered on March 29, 2013. Plaintiffs also appeal from an order denying plaintiffs' motion to vacate arbitration award and granting defendant Donald A. Bosco Building Inc.'s (Bosco) motion to confirm arbitration award, entered on August 17, 2010, and a summary disposition opinion and order entered May 17, 2011. Defendant Bosco cross-appeals as of right from an opinion and order regarding statutory attorney fees, entered November 8, 2011, as well as an order denying Bosco's motion for reconsideration of the November 8, 2011 order, entered January 4, 2012. Defendants Smede-Son Steel & Supply Company, Inc. (Smede-Son), Schwartz Plumbing, Inc. (Schwartz), Genesee Cut Stone & Marble Company, K & R Concrete, Inc., Detroit Spectrum Painters, Inc. (Detroit Spectrum), Rocwall Company (Rocwall), Stonework by Gulyas & Co, R & R Earthmovers, Inc., B & B Well Drilling, Inc., National Ladder & Scaffold Company, Inc., Professional Engineering Associates, Inc., Trucking Specialists, Inc. (Trucking Specialists), Beaver Stair Company (Beaver Stair), Delta Trim & Design, Inc., Franklin Floor Covering Plus, Inc. (Franklin), FMG Concrete Cutting, Inc., Get Rick Quik, Inc., Capital Stoneworks, L.L.C., Neilson Quality Homes, Inc., and TM Wood Products (TM Wood)[1] cross-appeal as of right from the March 29, 2013, order awarding statutory attorney fees. We affirm.

---

[1] Smede-Son, Detroit Spectrum, Rocwall, Franklin, and Beaver Stair filed separate cross-appeals and appellant briefs. Trucking Specialists filed its appellant brief along with Schwartz, Genesee Cut Stone & Marble Company, K & R Concrete, Inc., Stonework by Gulyas & Co, R & R Earthmovers, Inc., B & B Well Drilling, Inc., National Ladder & Scaffold Company, Inc., Professional Engineering Associates, Inc., Delta Trim & Design, Inc., FMG Concrete Cutting, Inc., Get Rick Quik, Inc., Capital Stoneworks, L.L.C., Neilson Quality Homes, Inc., and TM Wood. For ease of reference, these parties will be referred to as Trucking Specialists et al throughout this opinion.

## I. UNDERLYING FACTS AND PROCEDURAL HISTORY

On December 4, 2006, plaintiffs entered into a construction contract with Bosco. Bosco agreed to be plaintiffs' contractor during the construction of a new home for plaintiffs. Plaintiffs agreed to pay Bosco the cost of work, plus a 12.5% fee, with a negotiated guaranteed maximum price (GMP) of $3,350,000. The contract provided that costs exceeding the GMP would be paid by Bosco, but that the GMP was subject to adjustments as to agreed by the parties. Bosco hired various subcontractors to complete work on plaintiffs' home.

Throughout the project, plaintiffs requested changes and upgrades from the original design for the home. As a result, several change orders were submitted and agreed to by plaintiffs. In addition, Bosco submitted payment applications throughout the project that showed the increases to the budget. The 11th payment application listed the adjusted budget as $4,927,115.88. The 12th payment application presented to plaintiff listed the total contract price and adjusted budget as $6,838,462.91. After the 12th payment application, Bosco and plaintiffs met to identify cost-cutting measures, and, after applying the agreed-upon measures, Bosco issued the 14th payment application in September 2008 listing the total contract price and adjusted budget as $6,464,538.12. On September 17, 2008, plaintiffs terminated the contract. Plaintiffs and Bosco had an arbitration agreement, and plaintiffs filed an arbitration demand shortly thereafter. Bosco and its subcontractors, hereinafter collectively referred to as "lien claimants," then filed construction liens totaling $2,449,324.84 on plaintiffs' property. The liens prevented plaintiffs from continuing work on the home until the liens were resolved, which led to plaintiffs filing this lawsuit.

On January 13, 2009, plaintiffs filed a complaint against Bosco and the lien claimants for slander of title, civil conspiracy, and declaratory relief. Bosco and the lien claimants filed answers and counterclaims for lien enforcement. In November 2009, the trial court stayed the proceedings pending arbitration between plaintiffs and Bosco. On March 3, 2010, the arbitration award was issued. The arbitrators found in favor of Bosco and awarded Bosco $943,982.00 plus interest.

On June 1, 2010, plaintiffs filed a motion to modify or vacate the arbitration award, which the trial court denied in an August 18, 2010 order confirming the arbitration award. Plaintiffs then stipulated to dismiss their remaining claims of civil conspiracy and slander of title. A judgment against plaintiffs was entered on September 7, 2010.

After entry of the judgment, there were several months of litigation regarding satisfaction of the judgment. On May 2, 2011, Bosco filed a satisfaction of judgment. Also during this time period, the lien claimants filed motions for summary disposition on their construction liens. The lien claimants requested summary disposition on their liens pursuant to MCR 2.116(C)(9) and (C)(10). One of those parties was TM Wood. Plaintiffs asserted that TM Wood was not entitled to compensation because of defective workmanship. On May 17, 2011, the trial court entered an order granting the motions for summary disposition for the lien claimants and TM Wood.

Thereafter, the lien claimants and Bosco filed motions for attorney fees. On November 8, 2011, the court entered an order regarding statutory attorney fees. The trial court denied Bosco's motion for attorney fees. The court further found that the lien claimants were entitled to attorney

fees, and the court ordered an evidentiary hearing. The evidentiary hearing was held on December 17, 2012. On March 29, 2013, the trial court entered an order awarding statutory attorney fees. The court granted attorney fees pursuant to MCL 570.1118(2). The court ordered the following amounts in attorney fees and costs (amount requested shown in parenthesis):

| | |
|---|---|
| Mike Ottman Asphalt Paving | $2,569.00 ($4,653.15) |
| Smede-Son Steel & Supply | $2,904.00 ($21,263.74) |
| Dillman and Upton | $28,893.00 ($29,900.74) |
| Detroit Spectrum Painters | $6,595.00 ($40,265.75) |
| Rocwall Company | $6,654.00 ($21,615) |
| Beaver Stair Company | $7,928.00 ($22,900) |
| Extreme Stone Solutions | $16,116.00 ($16,133.20) |
| Franklin Floor Covering Plus | $19,505.00 ($21,099.27) |
| Ace Asphalt & Paving Company | $1,737.00 ($3,317) |
| Trucking Specialists et al ["Combined Claimants"] | $78,488.00 ($103,700.53) |

Plaintiffs now appeal four trial court decisions: (1) the confirmation of the arbitration award, (2) the granting of summary disposition to lien claimants, (3) the granting of summary disposition against TM Wood, and (4) award of attorney fees to the lien claimants. Bosco appeals the order denying it attorney fees from November 2012. All other lien claimants appeal from the trial court's March 29, 2013 order awarding attorney fees.

## II. JURISDICTION

Several lien claimants raise jurisdictional and waiver issues relating to plaintiffs' ability to appeal on several of the issues raised.

First, Bosco argues that plaintiffs waived appellate review of all issues except attorney fees because they satisfied the September 7, 2010 judgment. Bosco is correct that a party who satisfies a judgment "in whole or in part waives the right to maintain an appeal or seek review of the judgment for error, as long as the appeal or review might result in putting at issue the right to the relief already received." *Amerisure Ins Co v Auto-Owners Ins Co*, 262 Mich App 10, 28; 684 NW2d 391 (2004), quoting *Becker v Halliday*, 218 Mich App 576, 578; 554 NW2d 67 (1996). However, in *Becker*, this Court stated that there were exceptions to the general rule, and that the "principle guiding enforcement of a satisfaction of judgment is the promotion of certainty and finality." *Becker*, 218 Mich App at 579. In addition, involuntary satisfaction of a judgment does not constitute waiver. See *id*. at 578-580. The "payment of performance following the invocation or threatened exercise of a court's contempt power should not be regarded as

voluntary or as constituting a waiver of the right to challenge the court's order." *Indus Lease-Back Corp v Romulus Twp*, 23 Mich App 449, 452; 178 NW2d 819 (1970).

We do not agree that plaintiffs waived their right to appeal this issue. While the general rule seems to apply because plaintiffs satisfied the judgment against them, the proceedings were not final at the time of the satisfaction. See *Becker*, 218 Mich App at 579. All parties still had outstanding claims. Moreover, plaintiffs clearly intended to appeal. Plaintiffs asserted that they wanted to pay the judgment in full "subject only to their right to pursue their appeal." Plaintiffs also filed an application for interlocutory leave to appeal from the order confirming the arbitration award, which was denied by this Court.[2] If we adopted Bosco's waiver argument, plaintiffs would have essentially been precluded from pursuing an appeal. While Bosco and the lien claimants certainly have an interest in finality, the proceedings were not final at the time of plaintiffs' satisfaction of the judgment, and plaintiffs had a right to appellate review of this issue. Therefore, plaintiffs did not waive their right to appeal by satisfying the judgment.

Appellee Dillman and Upton, Inc. (Dillman) challenges plaintiffs' jurisdiction to appeal, asserting that plaintiffs' claim of appeal is untimely, and, thus, this Court lacks jurisdiction to review plaintiffs' claim, except for their claim regarding attorney fees. Specifically, Dillman asserts that plaintiffs should have appealed within 21 days from the May 17, 2011 summary disposition opinion and order because it was the first judgment or order in this case that disposed of all the claims between the parties.

This Court has jurisdiction over an appeal as of right filed by an aggrieved party from a final judgment or final order of the circuit court. Pursuant to MCR 7.202(6)(a), a final judgment or final order in a civil case means:

> (i) the first judgment or order that disposes of all the claims and adjudicates the rights and liabilities of all the parties, including such an order entered after reversal of an earlier final judgment or order,
> (ii) an order designated as final under MCR 2.604(B),
> (iii) in a domestic relations action, a postjudgment order affecting the custody of a minor,
> (iv) a postjudgment order awarding or denying attorney fees and costs under MCR 2.403, 2.405, 2.625 or other law or court rule[.] . . .

MCR 7.204(A)(1) provides that an appeal as of right in a civil action must be taken "21 days after entry of the judgment or order appealed from." There can be more than one final judgment or order in an action. *Avery v Demetropoulos*, 209 Mich App 500, 502-503; 531 NW2d 720 (1994). Pursuant to MCR 7.203(A)(1), "An appeal from an order described in MCR 7.206(a)(iii)-(v) is limited to the portion of the order with respect to which there is an appeal of right."

---

[2] *McAlpine v Bosco*, unpublished order of the Court of Appeals, entered September 30, 2010 (Docket No. 300059).

In *Baitlinger v Brisson*, 230 Mich App 112; 583 NW2d 481 (1998), the trial court entered an order granting summary disposition to the plaintiffs on April 20, 1996. *Id*. at 115. On May 10, 1996, the plaintiffs filed a motion for mediation sanctions, which were granted in a June 1, 1996 order. *Id*. The defendant thereafter filed an appeal from the April 20, 1996. *Id*. On appeal, the plaintiffs argued that the defendant lacked jurisdiction because the defendant's appeal was untimely. *Id*. The defendant argued that he waited to file an appeal until he knew the exact amount of sanctions. *Id*. at 116. This Court rejected the defendant's argument and held that defendant's appeal was not timely and not properly before the Court. *Id*. The defendant should have appealed within 21 days from the April 20, 1996 order, because it was the "first judgment or order that disposed of all the claims and adjudicated the rights and liabilities of the all the parties . . . ." *Id*.

Dillman asserts that the first judgment or order in this case was the May 17, 2011 summary disposition opinion and order. However, the trial court noted that the order "does not dispose of the last pending claim and does not close the case." The November 8, 2011 order regarding statutory attorney fees stated that the order "dispose[d] of the last pending claim and close[d] the case." The November 8, 2011 order denied Bosco attorney fees, granted fees for the lien claimants, and ordered an evidentiary hearing on the amount of attorney fees. Plaintiffs appeal from the March 29, 2013 order determining the amount of attorney fees.

Plaintiffs lack jurisdiction over all issues except attorney fees because their appeal is untimely. The present situation is analogous to the facts of *Baitlinger*. Despite the fact that plaintiffs were waiting until they knew the exact amount of attorney fees to appeal, the March 29, 2013 order was not the first final judgment or order. MCR 7.202(6)(a)(i); see *Baitlinger*, 230 Mich App at 116. We agree with Dillman that despite the court's statement that the May 17, 2011 order did not dispose of all the parties' claims, that order was the first final judgment or order because it disposed of all the claims between the parties except for attorney fees. As illustrated by *Baitlinger*, the attorney fees issue should be treated as a separate claim for jurisdictional purposes. This is further supported by MCR 7.202(6)(a)(i), which provides that a post-judgment order awarding or denying attorney fees and costs is a final order, as well as the proposition that there can be more than one final order in a case. *Avery*, 209 Mich App at 502-503. In terms of policy, this result is logical, especially compared to *Baitlinger*. In *Baitlinger*, only months had passed between the orders disputed by the parties. *Baitlinger*, 230 Mich App at 115-116. Here, years have passed since the trial court decided this case on the merits. Therefore, any possible reversal would cause massive upheaval for defendants, a result which lawmakers clearly intended to avoid based on the statutes at issue. While it may seem onerous for parties to file multiple appeals in one case, the alternate result, appeals being taken from decisions made in 2010, is equally unappealing. Therefore, the proper procedure plaintiffs should have followed was to appeal from the first final judgment or order to address the substantive case issues, and then separately appealed from the March 29, 2013 order regarding attorney fees. Moreover, even if the May 17, 2011 summary disposition opinion and order was not the first final judgment or order, then the November 8, 2011 order regarding statutory attorney fees was the first final judgment or order. Regardless of which order was designated as the "first judgment or order that disposed of all the claims and adjudicated the rights and liabilities of the all the parties," 21 days has passed since entry of both orders. MCR 7.204(A)(1). Therefore, the appeal is untimely.

Despite the procedural deficiency, we address the issues raised by plaintiffs to promote judicial efficiency and clearly dispose of these issues.

## III. ARBITRATION

Plaintiffs argue that the trial court erred in denying their motion to vacate or modify the arbitration award because the factual findings of the arbitrators compelled the conclusion that plaintiffs properly terminated the contract with Bosco. We disagree. "A trial court's decision to enforce, vacate, or modify an arbitration award is reviewed de novo." *Nordlund & Assoc*, *Inc v Hesperia*, 288 Mich App 222, 226; 792 NW2d 59 (2010).

Once an issue is submitted to arbitration, judicial review is limited by the uniform arbitration act and MCR 3.602. *DAIIE v Sanford*, 141 Mich App 820, 825; 369 NW2d 239 (1985). An award may be modified or corrected under MCR 3.602(K):

(2) On motion of a party filed within 91 days after the date of the award, the court shall modify or correct the award if:

(a) there is an evident miscalculation of figures or an evident mistake in the description of a person, a thing, or property referred to in the award;

(b) the arbitrator has awarded on a matter not submitted to the arbitrator, and the award may be corrected without affecting the merits of the decision on the issues submitted; or

(c) the award is imperfect in a matter of form, not affecting the merits of the controversy.

An award may be vacated under MCR 3.602(J):

(2) On motion of a party, the court shall vacate an award if:

(a) the award was procured by corruption, fraud, or other undue means;

(b) there was evident partiality by an arbitrator, appointed as a neutral, corruption of an arbitrator, or misconduct prejudicing a party's rights;

(c) the arbitrator exceeded his or her powers; or

(d) the arbitrator refused to postpone the hearing on a showing of sufficient cause, refused to hear evidence material to the controversy, or otherwise conducted the hearing to prejudice substantially a party's rights.

Here, plaintiffs assert that the arbitrators exceeded their powers through an error of law. MCR 3.602(J)(2)(c). An arbitrator exceeds his powers when he acts beyond the material terms of the contract from which he draws his authority, or in contravention of controlling principles of law. *Nordlund*, 288 Mich App at 228. An award will be vacated because an arbitrator exceeded his powers through an error of law when it clearly appears on the face of the award or the reasons for the decision as stated that the arbitrator through the error of law was led to a wrong

-7-

conclusion, and but for that error a substantially different award must have been made. *Saveski v Tiseo Architects*, *Inc*, 261 Mich App 553, 555; 682 NW2d 542 (2004). This standard precludes review on the basis that the award was against the great weight of the evidence or was not supported by substantial evidence. *Donegan v Mich Mut Ins Co*, 151 Mich App 540, 549; 391 NW2d 403 (1986). "Courts may not engage in contract interpretation, which is a question for the arbitrator." *Konal v Forlini*, 235 Mich App 69, 74; 596 NW2d 630 (1999). "Claims that the arbitrator made a factual error are beyond the scope of appellate review." *Id*. at 75. Courts may not substitute their judgment for that of the arbitrator. *Gordon Sel-Way, Inc v Spence Bros, Inc*, 438 Mich 488, 497; 475 NW2d 704 (1991).

Plaintiffs assert that the arbitrators erred in failing to find that Bosco anticipatorily breached the contract. "Under the doctrine of anticipatory breach, if a party to a contract, prior to the time of performance, unequivocally declares the intent not to perform, the innocent party has the option to either sue immediately for the breach of contract or wait until the time of performance." *Paul v Bogle*, 193 Mich App 479, 493; 484 NW2d 728 (1992), citing *Brauer v Hobbs*, 151 Mich App 769, 776; 391 NW2d 482 (1986). At issue here, specifically, is whether a payment application submitted by Bosco to plaintiffs constituted an unequivocal declaration of the intent not to perform. Plaintiffs argue that the arbitrators' findings of fact necessitated a finding that Bosco declared intent not to perform. The arbitrators found:

> 2. [Bosco] performed some of the work on the project, submitting 14 Applications for Payment ("payment applications"), starting with the first payment application on January 8, 2007 and ending with the 14th payment application on September 10, 2008, revised November 12, 2008. [Plaintiffs] fully paid payment applications 1 through 11 (April 29, 2008), and partially paid payment application 12 (July 14, 2008). In all [plaintiffs] paid [Bosco] $3,206,489.00.

> * * *

> 10. The payment applications were detailed and illustrative adjustments to the budget for the project. [Plaintiffs] did not question the payment applications and did not question the Adjusted Budget contained within the payment applications. [Plaintiffs] fully and timely paid the first 11 payment applications, and partially paid payment application 12.

> 11. The payment applications provided ample notice to [plaintiffs] of the increases to the budget and [plaintiffs'] payment of the payment applications indicated acceptance of the increases to the budget.

> 12. [Bosco] submitted documents to [Plaintiffs] titled "Change Order" at times throughout the Project. . . .

> * * *

> 15. The Change Orders effectively increased the GMP to $5,055,820 (the "Adjusted GMP").

-8-

16. Accordingly, [Plaintiffs'] contention that [Bosco] breached the Agreement by submitting payment applications in excess of the GMP as stated in the Agreement is without merit and denied. [Plaintiffs'] contention that [Bosco] breached the Agreement when it admitted that it could not complete the construction of the Project for the GMP as stated in the Agreement is also without merit and denied.

We do not agree with plaintiffs that the factual findings of the arbitrators require a finding of anticipatory breach. The arbitrators found that the contract price could be changed in two ways: 1) through payments made by plaintiffs in response to payment applications, and 2) through change orders approved by plaintiffs. The fact that the payment application provided plaintiffs "ample notice" of the increases in budget does not necessitate a holding that the payment application was an unequivocal declaration of nonperformance. Additionally, testimony by Bosco's president that Bosco would have charged $6,464,538.12 to complete the project even though the GMP was only adjusted by change orders to $5,055,820 does not constitute an unequivocal declaration of nonperformance to plaintiffs. There was no indication, outside of the payment application, that Bosco communicated that information to plaintiffs. Moreover, all increases in budget were due to plaintiffs' requests for additional designs to the home, not due to rising costs by Bosco. There is no evidence to suggest that Bosco could not have completed the home as originally designed in the parties' contract with the changes agreed to in the paid payment applications or change orders for the GMP of $5,055,820.[3]

In addition, because the trial court properly refused to vacate the arbitration award, the trial court did not err in granting summary disposition to the lien claimants and Bosco.

IV. TM WOOD'S MOTION FOR SUMMARY DISPOSITION

Plaintiffs argues that the trial court erred in granting TM Wood's motion for summary disposition pursuant to MCR 2.116(C)(10) because there was a question of fact regarding defective workmanship. We disagree.

A trial court's ruling on a motion for summary disposition presents a question of law subject to de novo review. *Titan Ins Co v Hyten*, 491 Mich 547, 553; 817 NW2d 562 (2012). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Liparoto Constr, Inc v Gen Shale Brick, Inc*, 284 Mich App 25, 29; 772 NW2d 801 (2009). Initially, the moving party must support its claim for summary disposition by affidavits, depositions, admissions, or other documentary evidence. *McCoig Materials, LLC v Galui Constr, Inc*, 295 Mich App 684, 693; 818 NW2d 410 (2012). Once satisfied, the burden shifts to the nonmoving party to establish that a genuine issue of material fact exists for trial. *Id*. The

---

[3] Defendants assert that plaintiffs' arguments relate to the arbitrators' findings of fact, not to the conclusions of law. To the extent that plaintiffs' arguments extend outside of this analysis, we agree. This Court does not consider the interpretation or effect of the payment applications, only whether the factual findings of the arbitrators necessarily equates to anticipatory breach of contract. See *Konal*, 235 Mich App at 74-75.

court reviews "a motion brought under MCR 2.116(C)(10) by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). "Summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id.*

The crux of the issue between plaintiffs and TM Wood hinges on the applicability of the Uniform Commercial Code (UCC). TM Wood asserts that the UCC bars plaintiffs' claim regarding defective workmanship. If the UCC applies, plaintiffs were required to provide TM Wood notice of the defective goods within a reasonable time. MCL 440.2607(3)(a). Plaintiffs failed to notify TM Wood of the allegedly defective goods until years after the work was completed—TM Wood completed work for plaintiffs on September 9, 2009, and plaintiffs first asserted its claim of defective workmanship in March 2011. In response, plaintiffs argue that the contract was predominantly comprised of services and, thus, the UCC is inapplicable.

The UCC applies to transactions in goods. MCL 440.2102. Goods "mean all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale." MCL 440.2105(1). If a contract is for both goods and services, the UCC is applicable only if the contract is predominantly for the sale of goods. Michigan applies the "predominant factor test" to determine whether a contract primarily involves the sale of goods or the sale of services. *Home Ins Co v Detroit Fire Extinguisher Co, Inc*, 212 Mich App 522, 526-527; 538 NW2d 424 (1995). "The test for inclusion or exclusion is not whether they are mixed, but, granting that they are mixed, whether their predominant factor, their thrust, their purpose, reasonably stated, is the rendition of service, with goods incidentally involved . . . or is a transaction of sale, with labor incidentally involved . . . ." *Neibarger v Universal Cooperatives, Inc*, 439 Mich 512, 534; 486 NW2d 612 (1992) (citation omitted).

Here, plaintiffs allege that TM Wood provided them with a defective "front entry system," and improperly installed the "front entry system." TM Wood argues that it provided custom millwork for the property (the "front entry system"), but that it was not responsible for installation. While plaintiffs further allege that TM Wood failed to timely and properly install a front entry system in the home, the predominant factor in the contract, and in the current claim, is the alleged defective nature of the front entry system, which is a good. The claim asserted against TM Wood is based on its role as a manufacturer of a good, and, thus, the UCC applies. See *Citizens Ins Co v Osmose Wood Preserving, Inc*, 231 Mich App 40, 45-46; 585 NW2d 314 (1998). Further, we do not agree with plaintiffs that custom-made goods are services because the manufacture of such goods is "labor intensive." The UCC applies to specially manufactured goods. MCL 440.2105(1). Because plaintiffs failed to provide TM Wood notice of the alleged defective goods within a reasonable time pursuant to MCL 440.2607(3)(a), the trial court did not err in granting TM Wood's Motion for Summary Disposition.

## V. ATTORNEY FEES

## A. BOSCO'S ATTORNEY FEES

Bosco argues that the trial court abused its discretion in denying Bosco's requests for attorney fees pursuant to MCL 570.1118, MCL 600.2591, and MCR 2.114. We disagree.

A decision whether to award attorney fees is within the trial court's discretion and is reviewed for an abuse of discretion. *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008). An abuse of discretion occurred when the decision was outside the range of reasonable and principled outcomes. *Id.*

A determination whether a claim is frivolous depends upon the particular circumstances of each case. *Kitchen v Kitchen*, 465 Mich 654, 662; 641 NW2d 245 (2002). A trial court's finding whether a claim or defense was frivolous will not be reversed on appeal unless clearly erroneous. *Id.* at 661; *1300 Lafayette East Coop v Savoy*, 284 Mich App 522, 533; 773 NW2d 57 (2009). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake was made. *Kitchen,* 465 Mich at 661-662; *Robert A Hansen Family Trust v FGH Inds, LLC*, 279 Mich App 468, 486; 760 NW2d 526 (2008).

Bosco first asserts entitlement to fees pursuant to MCL 570.1118 of the Michigan Construction Lien Act (CLA). MCL 570.1118(2) provides: "The court *may* allow reasonable attorneys' fees to a lien claimant who is the prevailing party." (Emphasis added.) Although the word "shall" generally is used to designate a mandatory provision, the word "may" designates discretion. *Old Kent Bank v Kal Kustom, Enterprises*, 255 Mich App 524, 532; 660 NW2d 384 (2003). "As a general rule, the word 'may' will not be treated as a word of command unless there is something in the context or subject matter of the act to indicate that it was used in such a sense." *Mill Creek Coalition v South Branch of Mill Creek Intercounty Drain Dist*, 210 Mich App 559, 565; 534 NW2d 168 (1995). There is nothing in MCL 570.1118 that indicates that an award of attorney fees to a prevailing party is mandatory, shown by the use of the word "may." Therefore, even though Bosco was the prevailing party, the trial court was not required to award attorney fees under the statute. The trial court did not abuse its discretion in denying to award attorney fees pursuant to MCL 570.1118.

Second, Bosco claims that the trial court erred in failing to address whether Bosco was entitled to attorney fees pursuant to MCL 600.2591 and MCR 2.114. In its November 8, 2011 order regarding statutory attorney fees, the trial court summarized MCL 570.1118(2), emphasizing that it was discretionary. The trial court then stated:

> As to Defendant Donald Bosco Building the Court finds that the award of attorney fees is not warranted. The Arbitrators awarded Defendant slightly more than half of its construction lien. Because Plaintiffs avoided an overpayment of $780,697, the Court finds that Plaintiffs['] refusal to pay the original lien amount was not unreasonable.

The Court also ordered that Bosco's "Motion for Statutory Attorney Fees is DENIED."

We do not agree that the trial court failed to address Bosco's request for attorney fees pursuant to MCL 600.2591 and MCR 2.114. While the trial court did not specifically reference the statutes, it clearly denied Bosco's entire motion for attorney fees, which included Bosco's requests pursuant to MCL 600.2591 and MCR 2.114. Further, the trial court's statement containing reasoning for its denial of attorney fees was not specific to MCL 570.1118, MCL

600.2591, or MCR 2.114, and the trial court's reasoning could be attributed to any of the statutes.  For these reasons, the trial court did address this issue and denied Bosco's request.

We further hold that the trial court did not clearly err in denying Bosco's request for attorney fees pursuant to MCL 600.2591 and MCR 2.114.  MCR 2.114(C)(1) provides that every document of a party who is represented by an attorney must be signed by the party's attorney of record.  By signing the document, the attorney certifies that he or she has read the document and that:

> (2) to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law; and
> (3) the document is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. [MCR 2.114(D)(2-3).]

If a document is signed in violation of the court rule, the trial court "on the motion of a party or on its own initiative, shall impose" on the attorney, the party, or both, an "appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including reasonable attorney fees."  MCR 2.114(E).  The purpose of MCR 2.114(E) "is to deter parties and attorneys from filing documents or asserting claims and defenses that have not been sufficiently investigated and researched or that are intended to serve an improper purpose."  *FMB-First Mich Bank v Bailey*, 232 Mich App 711, 722-723; 591 NW2d 676 (1998).   In determining whether a document was signed in violation of MCR 2.114, a court is to consider the circumstances that existed at the time the document was signed.  *Hansen Family Trust*, 279 Mich App at 486.

In addition to sanctions imposed under MCR 2.114(E), where a party pleads a frivolous claim or defense, the party "is subject to costs as provided in MCR 2.625(A)(2). The court may not assess punitive damages."  MCR 2.114(F).  Pursuant to MCR 2.625(A)(2), if the trial court finds that a claim was frivolous, it shall award costs and fees incurred by the prevailing party against whom the frivolous claim was made as provided in MCL 600.2591.  MCL 600.2591(1) provides:

> Upon motion of any party, if a court finds that a civil action . . . was frivolous, the court that conducts the civil action shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney.

Pursuant to MCL 600.2591(3)(a):

> "Frivolous" means that at least 1 of the following conditions is met:
>
> (*i*) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.

(*ii*) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.

(*iii*) The party's legal position was devoid of arguable legal merit.

The determination whether a claim or defense was frivolous must be based upon the circumstances at the time it was asserted. *Hansen Family Trust*, 279 Mich App at 486. Unlike under the court rule, sanctions under MCL 600.2591 are available only to a prevailing party, which is defined as a party who wins on the entire record. MCL 600.2591(3)(b); *1300 Lafayette East Coop*, 284 Mich App at 534.

The trial court did not clearly err in determining that Bosco was not entitled to attorney fees pursuant to MCL 600.2591 or MCR 2.114. Specifically, Bosco asserts that plaintiffs' claims were frivolous because plaintiffs' primary purpose in initiating the action was to harass, embarrass, or injure Bosco. While the trial court did not make a decision specific to MCL 600.2591 and MCR 2.114, the trial court found that "The Arbitrators awarded Defendant slightly more than half of its construction lien. Because Plaintiffs avoided an overpayment of $780,697, the Court finds that Plaintiffs['] refusal to pay the original lien amount was not unreasonable." The trial court did not clearly err in its holding. There was no evidence that it was plaintiffs' intent to harass, embarrass, or injure Bosco. Instead, plaintiffs have vehemently asserted their legal position in the trial court and on appeal, and there is no indication that plaintiffs do not believe they should prevail in their legal arguments. On appeal, Bosco primarily relies on the fact that plaintiffs filed many claims against them, including several that were outside of this action, and plaintiffs were unsuccessful in all of those claims. However, the fact that a plaintiff does not ultimately prevail on an action does not mean the plaintiff's action was frivolous. *1300 Lafayette East Coop*, 284 Mich App at 534. Further, while plaintiffs did not prevail, Bosco did not recover the entire amount which it requested pursuant to the contract breach during arbitration, as stated by the trial court. Therefore, plaintiffs' claims were not unfounded. For these reasons, we do not agree that the trial court clearly erred in denying Bosco's request for attorney fees pursuant to MCL 600.2591 and MCR 2.114.

## B. LIEN CLAIMANTS' ATTORNEY FEES

The lien claimants and plaintiffs argue that the trial court erred in its award of attorney fees to the lien claimants. We disagree.

Again, a decision whether to award attorney fees is within the trial court's discretion and we review for an abuse of discretion. *Smith*, 481 Mich at 526. The trial court's determination of the reasonableness of attorney fees is also reviewed for an abuse of discretion. *In re Temple Marital Trust*, 278 Mich App 122, 128; 748 NW2d 265 (2008). An abuse of discretion occurs when the decision was outside the range of reasonable and principled outcomes. *Smith*, 481 Mich at 526. The findings of fact underlying an award of attorney fees are reviewed for clear error, while underlying questions of law are reviewed de novo. *Brown v Home-Owners Ins Co*, 298 Mich App 678, 690; 828 NW2d 400 (2012). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire record is left with a definite and firm conviction that a mistake was made." *Id*. (citation omitted).

-13-

First, plaintiffs argue that the trial court abused its discretion in awarding attorney fees to the lien claimants because the lien claimants did not prove reasonableness of attorney fees. When attorney fees are awarded, the amount awarded is for reasonable fees, not actual fees. See *Smith*, 481 Mich at 528 n 12. If the reasonableness of a fee request is challenged, the court should conduct an evidentiary hearing to determine what services were actually rendered and the reasonableness of those services. *Souden v Souden*, 303 Mich App 406, 414-417; 844 NW2d 151 (2013). The burden of proof as to reasonableness rests on the party claiming compensation. *Smith*, 481 Mich at 528-529. There is no precise formula for assessing the reasonableness of attorney fees, but factors that must be considered include: (1) the skill, time and labor involved; (2) the likelihood, if apparent to the client, that the acceptance of the employment will preclude other employment by the lawyer; (3) the fee customarily charged in that locality for similar services; (4) the amount in question and the results achieved; (5) the expense incurred; (6) the time limitations imposed by the client or the circumstances; (7) the nature and length of the professional relationship with the client; (8) the professional standing and experience of the attorney; and (9) whether the fee is fixed or contingent. *Id*. at 529-530. The trial court should briefly discuss its view of the factors on the record. *Id*. at 529 n 14, 531. In awarding fees, the court must first ascertain the fee customarily charged in the locality for similar legal services, by reference to reliable surveys or other credible evidence of the legal market. *Id*. at 530-531. The court should then multiply the rate by the reasonable number of hours expended on the case, and the result should be the starting point for calculating a reasonable fee, as modified by the consideration of other relevant factors. *Id*. at 531, 533. Actual fees charged are not necessarily reasonable fees. *Vittiglio v Vittiglio*, 297 Mich App 391, 410; 824 NW2d 591 (2012).

Pursuant to MCL 570.1118(2), the trial court may award a prevailing party attorney fees. "[T]he only requirement for a claimant to receive attorney fees under the Construction Lien Act is to be the prevailing party." *CD Barnes Assoc v Star Heaven, LLC*, 300 Mich App 389, 427; 834 NW2d 878 (2013). Here, the trial court correctly determined that the lien claimants were the prevailing party, and, thus, did not abuse its discretion by awarding reasonable attorney fees.

Further, the trial court did not abuse its discretion in finding that the lien claimants met their burden of proof as to reasonableness. *Smith*, 481 Mich at 528-529. Plaintiffs did not dispute the hourly rate of the attorneys representing the lien claimants, but only disputed the amount of hours reasonably expended. At the evidentiary hearing, all lien claimants presented billing statements, and several of the lien claimants presented expert testimony by Ted Stroud. Stroud opined that the time spent by Detroit Spectrum, Trucking Specialists et al, Smede-Son, Franklin, Dillman, Beaver Stair, and Ottman was reasonable. Stroud also rejected plaintiffs' contention that if tasks were not directly related to the enforcement of the construction lien, the fees should not be recovered. The entire action was for the enforcement of the liens, and the statute allows fees in an action to enforce a lien. Therefore, reasonable time spent in the entire action is subject to the statute and attorney fees may be awarded within the court's discretion. Further, it was reasonable for the lien claimants' attorneys to remain apprised of the entire proceedings because plaintiffs would "undoubtedly" argue that the collection of the lien claims could not exceed the contract balance with Bosco. Accordingly, the lien claimants presented evidence to support the reasonableness of the attorney fees, and the trial court did not abuse its discretion in awarding fees.

Second, the lien claimants argue that, although the trial court correctly awarded attorney

fees, the trial court abused its discretion in reducing the amount of attorney fees requested without explanation.

In its March 29, 2013 order awarding attorney fees, the trial court stated: "Among the factors that are appropriate to consider in assessing such fees are: the complexity and difficulty of the case and the number of working hours which reasonably can be justified and whether the [plaintiffs'] refusal to pay the claimed debt was unreasonable." All appealing lien claimants and plaintiffs argue that the trial court finding regarding the attorney fees was insufficient. We disagree.

As stated, there are several factors used to consider the reasonableness of attorney fees. *Smith* 481 Mich at 529-530. The trial court should briefly discuss its view of the factors on the record. *Id*. at 529 n 14, 531. A trial court if not required to give detailed findings regarding each factor. *John J Fannon Co v Fannon Prod*, 269 Mich App 162, 172; 712 NW2d 731 (2005). Here, the trial court referenced the factors that it relied on in determining the reasonableness of attorney fees: 1) the complexity and difficulty of the case and the number of hours which reasonably can be justified, and 2) whether plaintiffs' refusal to pay the claimed debt was unreasonable. These findings are sufficient to aid appellate review. *Smith*, 481 Mich at 531.

Based on the trial court's findings, the trial court did not abuse its discretion in reducing the attorney fee awards. Plaintiffs presented expert testimony from Mayer Morganroth to show that their refusal to pay the debt owed to the lien claimants was not unreasonable. Moreover, plaintiffs presented expert testimony that the case was not complex or difficult, in particular for those lien claimants with small claims. Specifically, Morganroth testified that proportionality of claims was troubling in this case, and while it is possible for a claimant to get more in attorney fees than they actually recovered in their claim, it was not appropriate in this case.[4] The trial court's decision was supported by expert testimony, and does not constitute an abuse of discretion.

All lien claimants, including Bosco, also request attorney fees incurred in this appeal. MCL 570.1118(2) does not limit recovery of attorney fees, and, thus, the prevailing lien claimant may recover attorney fees on appeal. *Solution Source v LPR Assocs Ltd Partnership*, 252 Mich App 368, 375; 652 NW2d 474 (2002). Because no parties prevail on their appeals, we decline to award attorney fees.

## VI. CONCLUSION

---

[4] Smede-Son specifically addresses issues with proportionality and whether proportionality of a parties' claim and the requested attorney fee award should be permissible. Smede-Son relies on *Solution Source v LPR Assocs Ltd Partnership*, 252 Mich App 368, 381; 652 NW2d 474 (2002), where the lien claimant was awarded more in attorney fees than its actual claim. While such a situation is possible, we do not agree that a trial court's consideration of proportionality is an abuse of discretion, particularly in a case with so many lien claimants.

The trial court did not err in denying plaintiffs' motion to vacate or modify the arbitration award, and, therefore, did not err in granting summary disposition to the lien claimants and Bosco. The trial court did not err in granting TM Wood's Motion for Summary Disposition. The trial court did not abuse its discretion in denying Bosco attorney fees pursuant to MCL 570.1118, nor did it clearly err in denying Bosco attorney fees pursuant to MCL 600.2591 and MCR 2.114. Finally, the trial court did not abuse its discretion in awarding attorney fees or in the determination of the reasonableness of attorney fees.

Affirmed.

/s/ Peter D. O'Connell
/s/ Mark J. Cavanagh
/s/ Karen M. Fort Hood